690 A.2d 651

SOPHIE MISTRICK, PETITIONER–APPELLANT, v.
DIVISION OF MEDICAL ASSISTANCE AND
HEALTH SERVICES, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 4, 1997—Decided March 24, 1997.

Before Judges PRESSLER, STERN and WECKER.

*Joseph A. Bottitta,* argued the cause for appellant (*Bottitta & Bascelli,* attorneys; *Mr. Bottitta* and *Angelo Dattolo,* on the brief).

*Eric M. Underriner,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Mr. Underriner,* on the brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

This is a Medicaid eligibility case. The sole legal issue before us is the correctness of the final decision of the Director of the respondent Division of Medical Assistance and Health Services holding that for purposes of determining one spouse's resource-eligibility for institutional Medicaid, the individual retirement account (IRA) of the other spouse is an includable resource. We are satisfied that this conclusion is incorrect as a matter of law, and we therefore reverse the Division's decision, which affirmed the ineligibility determination of respondent Passaic County Board of Social Services.

The facts are not in dispute. In October 1994, petitioner Sophie Mistrick, the so-called institutional spouse, was institutionalized at Wayne View Convalescent Center, where she has resided ever since. At that time, she had been married to Joseph Mistrick, the

so-called community spouse, for forty-two years. They remain married. There is no question that at the time of commencement of the institutional spouse's residence at Wayne View, the couple's income and resources exceeded Medicaid eligibility limitations. Thus in 1994, Joseph Mistrick was still employed by his long-time employer, International Specialty Products, which, since it did not offer a company pension plan, had designated his GAFCAP 401(k) program as his retirement account. The employer had made regular contributions to the 401(k) which had a face value of $118,800 in October 1994. In addition, at that time the couple owned their marital residence; the community spouse had an additional Vanguard IRA account with a balance of some $23,783, savings accounts totalling some $42,800, and life insurance having a cash surrender value of some $15,500; the institutional spouse had a savings account in her own name with a balance of some $34,000.

The community spouse retired in April 1995. As a condition of his retirement, he was required to roll the 401(k) plan over into an IRA account, which he did. His monthly income then totalled about $2,400, consisting of social security, payments from the IRA, and a small monthly pension payment of $178 from an unidentified source.

This application for institutional Medicaid benefits to respondent Passaic County Board of Social Services was made in April 1995 after the couple had "spent down"[1] their available assets for the institutional spouse's medical expenses. At that time, petitioner had no actual resources left, and the community spouse had remaining only the marital residence, the IRAs, and what is referred to under Medicaid regulations as the community spouse's

---

[1] As to the concept of "spending down" resources, see *L.M. v. State, Div. of Med. Assist. & Health Serv.*, 140 *N.J.* 480, 485–486, 659 A.2d 450 (1995), explaining the Medicaid methodology whereby persons having an excess of income and/or resources for purposes of qualifying for Medicaid benefits may become eligible after using up that excess to pay for medical expenses.

resource allowance in the amount of some $23,800.[2]   The application was denied on the ground that the community spouse's IRAs were an includable resource, bringing the total remaining resources over the eligibility level.   Petitioner appealed to the Division, which referred the matter to the Office of Administrative Law as a contested case.   The administrative law judge (ALJ) rendered an initial decision concluding that the IRAs were excludable resources.   The Director of the Division accepted the ALJ's factual findings but disagreed as to the includability of the IRAs as countable resources.   Petitioner appeals.

In considering the Division's decision, we are mindful of the general proposition that the interpretation by an agency of the statute and regulations it is obliged to administer and implement is entitled to considerable weight.   *See, e.g., Matter of Musick,* 143 *N.J.* 206, 217, 670 *A.*2d 11 (1996); *Kletzkin v. Board of Education of Borough of Spotswood,* 136 *N.J.* 275, 278, 642 *A.*2d 993 (1994). Nevertheless, it is also well-settled that the appellate court is not bound by the agency's interpretation or by its determination of questions of law.   We are, moreover, satisfied that the agency's decision here respecting the includability of the community spouse's retirement funds is based on a misreading of controlling federal and state legislation.

While we recognize the interpretive difficulty involved in navigating through federal legislation and regulation governing the administration of social-benefit programs, we view the issue before us as an essentially simple and straightforward one.

We start with the well-settled proposition that Medicaid is a cooperative program between the federal government and those states that choose to participate by which needy persons are afforded medical assistance at public expense.   State participation requires, moreover, the compliance by state Medicaid plans with

---

2 We need not, for purposes of this opinion, consider or address the so-called deeming rules of eligibility whereby the institutional spouse is deemed to have available the resources owned by the community spouse.

Title XIX of the Social Security Act, 42 *U.S.C.A.* §§ 1396–1396v, and the regulations adopted pursuant thereto. *See generally Atkins v. Rivera*, 477 *U.S.* 154, 157, 106 *S.Ct.* 2456, 2458, 91 *L.Ed.2d* 131, 137 (1986); *Schweiker v. Gray Panthers*, 453 *U.S.* 34, 36–37, 101 *S.Ct.* 2633, 2636, 69 *L.Ed.2d* 460, 465 (1981); *Harris v. McRae*, 448 *U.S.* 297, 301, 100 *S.Ct.* 2671, 2680, 65 *L.Ed.2d* 784, 795 (1980); *L.M., supra,* 140 *N.J.* at 484–485, 659 *A.2d* 450. New Jersey has chosen to cooperate by enactment of the Medical Assistance and Health Services Act, *N.J.S.A.* 30:4D–1 to –19.1. Federal law requires that if a state chooses to participate, it must make medical assistance available to all so-called categorically needy persons, that is, persons receiving categorical aid, such as aid to families with dependent children (AFDC) and supplemental security income (SSI).[3] 42 *U.S.C.A.* § 1396a(a)(10)(A)(i). In addition, 42 *U.S.C.A.* § 1396a(a)(10)(C) authorizes a state to elect to provide assistance to other classifications of needy individuals, defined with specificity by 42 *U.S.C.A.* § 1396d(a), including those persons whose income and resources are too low to meet their medical expenses yet too high to qualify them for cash assistance under SSI or AFDC, and who otherwise meet the nonfinancial eligibility requirements for those programs. This group is known as the "medically needy." *See Atkins v. Rivera, supra,* 477 *U.S.* at 157–158, 106 *S.Ct.* at 2459, 91 *L.Ed.2d* at 137–138; *L.M., supra,* 140 *N.J.* at 487–488, 659 *A.2d* 450. New Jersey has also chosen to provide assistance to medically needy individuals consistent with federal guidelines. *N.J.S.A.* 30:4D–3i(8).

When a state has elected to provide medically-needy benefits, it must comply with 42 *U.S.C.A.* § 1396a(a)(10)(C)(i)(III), which requires, in pertinent part, that the state plan for such persons include a description of the "single standard" for determining income and resource eligibility for all covered groups of medically needy individuals and a description of

---

[3] For present purposes, "categorically needy" and "SSI recipients" are interchangeable classifications.

the methodology to be employed in determining such eligibility, which shall be no more restrictive than the methodology which would be employed under the supplemental security income program....

What this law thus requires is that in respect of all covered non-categorically needy individuals who are in need of medical assistance, the same standard for income and resource eligibility levels must be applied to all groups of covered individuals—for example, the groups of medically needy aged, blind, or disabled—notwithstanding that these levels are higher than those prescribed for the categorically needy. With respect, however, to the methodology of calculating eligibility, the methodology to be employed for the non-categorically needy may not be more restrictive than that used for categorically needy SSI participants in the case of groups consisting of the aged, blind, and disabled, or, in the case of other groups, than the methodology used under the appropriate state plan for the group most closely categorically related.[4]

There is no dispute that petitioner is in the medically-needy group. Thus, the sole legal question before us is whether the methodology referred to by § 1396a(a)(10)(C)(i)(III) includes the determination of which assets may be included in calculating resource eligibility. Or, asked another way, is the exclusion of assets from the resource eligibility determination a matter of

---

[4] The "no more restrictive" methodology requirement for the non-categorically needy who are institutionalized is underscored by the repetition of that mandate in 42 *U.S.C.A.* § 1396a(r)(2). 42 *U.S.C.A.* § 1396a(r)(2)(A) provides:

The methodology to be employed in determining income and resources for individuals under subsection ... (a)(10)(C)(i)(III) ... of this section may be less restrictive, and shall be no more restrictive, than the methodology—

(i) in the case of groups consisting of aged, blind, or disabled individuals, under the supplemental security income program under subchapter XVI of this chapter, or

(ii) in the case of other groups, under the State plan most closely categorically related.

42 *U.S.C.A.* § 1396a(r)(2)(B) further provides:

For purposes of this subsection and subsection (a)(10) of this section, methodology is considered to be "no more restrictive" if, using the methodology, additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance.

methodology or a matter of setting a resource limit. If it is a matter of methodology, then it is at once evident that under the "no more restrictive" proviso, assets which may not be included by the State for determining resource eligibility for SSI may also not be included by the State for determining resource eligibility for medically-needy participants.

It is not subject to dispute that for purposes of determining SSI eligibility—i.e., categorically-needy eligibility—the pension plans and IRAs of the spouse of the person requiring medical assistance are not countable resources, 20 *C.F.R.* § 416.1202(a), expressly applicable to SSI eligibility, specifically providing that:

In the case of an individual who is living with a person not eligible under this part and who is considered to be the husband or wife of such individual under the criteria in §§ 416.1806 and 416.1811, such individual's resources shall be deemed to include any resources, not otherwise excluded under this subpart, of such spouse whether or not such resources are available to such individual. In addition to the exclusions listed in § 416.1210, pension funds which the ineligible spouse may have are also excluded. "Pension funds" are defined as funds held in individual retirement accounts (IRA), as described by the Internal Revenue Code, or in work-related pension plans (including such plans for self-employed individuals, sometimes referred to as Keogh plans).

Thus, if petitioner Sophie Mistrick were applying for institutional Medicaid as an SSI recipient, it is clear, and the Division agrees, that Joseph Mistrick's IRAs would not be includable resources in determining her resource eligibility. Because, however, of the "no more restrictive" methodology proviso of § 1396a(a)(10)(C)(i)(III), we are convinced that the IRAs are also not includable for purposes of determining resource eligibility as a medically needy person. In sum, we conclude that the "methodology" referred to by § 1396a(a)(10)(C)(i)(III) includes the determination of excludable and includable assets, and therefore that the State is precluded by the Supremacy Clause of the United States Constitution from imposing a more restrictive exclusion for the medically needy than for the categorically needy. *U.S. Const.* art. VI, cl. 2.

In reaching this conclusion, we rely on the explanation by the United States Supreme Court in *Atkins v. Rivera, supra,* of the

scope, intention and purpose of the "no more restrictive" methodology requirement of § 1396a(a)(10)(C)(i)(III). Essentially, the Court pointed out that "the 'same methodology' requirement simply instructs States to treat components of income—e.g., interest or court-ordered support payments—similarly for both medically and categorically needy persons." *Atkins v. Rivera, supra,* 477 *U.S.* at 163, 106 *S.Ct.* at 2461, 91 *L.Ed.*2d at 141. *See also Camacho v. Perales,* 786 *F.*2d 32 (2nd Cir.1986). We think it plain that "components of income" is exactly congruent to components of resources and hence, that assets excludable from calculating available resources for categorically needy persons are necessarily also excluded when calculating the resources of medically needy persons. Indeed, *Atkins v. Rivera* further explains that the impetus for the statutory language of § 1396a(a)(10)(C)(i)(III) and its incorporation of the methodology language was precisely for the purpose of permitting the states to set different income and resource levels for medically needy applicants while preventing them from otherwise using "eligibility standards that were unrelated to the standards used in AFDC or SSI, as long as they were 'reasonable.' " *Atkins v. Rivera, supra,* 477 *U.S.* at 165, 106 *S.Ct.* at 2462, 91 *L.Ed.*2d at 142. *See also Glosenger v. Perales,* 83 *N.Y.*2d 984, 616 *N.Y.S.*2d 330, 639 *N.E.*2d 1127 (1994); *Camacho, supra.*

The Division is, of course, correct in arguing that New Jersey's Medicaid regulations do not include the community spouse's pension plans and IRAs as excludable assets. *See N.J.A.C.* 10:71–4.2, –4.4, –4.6, and –4.8. It is, however, incorrect that the regulations may validly include assets for medically-needy eligibility determinations that are required by the "no more restrictive" methodology requirement of § 1396a(a)(10)(C)(i)(III) to be excluded. Pension plans and IRAs are required to be excluded as components of resources because of the SSI regulations so providing for SSI applicants.

We also reject the Division's argument that only an SSI recipient or person eligible for SSI is entitled to the benefit of the

federal regulation requiring the exclusion of pension plans and IRAs from resource calculation. The whole point of §§ 1396a(a)(10)(C)(i)(III) and 1396a(r)(2) is to require the same treatment for the medically needy as for the categorically needy in respect of the methods by which their respective eligibilities are determined. Excludability of assets is part of that method. There may be no disparity.

The determination appealed from is reversed, and the matter is remanded for calculation of the Medicaid benefits to which petitioner is entitled from the date of her eligibility, calculated without reference to her spouse's IRAs.