712 A.2d 188

SOPHIE MISTRICK, PETITIONER–RESPONDENT, v. DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES, RESPONDENT–APPELLANT, AND PASSAIC COUNTY BOARD OF SOCIAL SERVICES, RESPONDENT.

Argued March 3, 1998—Decided June 8, 1998.

*Meredith G. Van Pelt,* Deputy Attorney General, argued the cause for appellant (*Peter Verniero,* Attorney General of New Jersey, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel).

*Joseph A. Bottitta* argued the cause for respondent (*Bottitta & Bascelli,* attorneys; *Mr. Bottitta* and *Angelo Dattolo,* on the brief).

The opinion of the Court was delivered by

STEIN, J.

The critical issue presented by this appeal is whether an individual retirement account (IRA) in the name of a husband must be included as a resource for purposes of determining his wife's Medicaid eligibility when the wife enters a nursing home but the husband remains in the community. With greater life expectancy significantly increasing the percentage of our population that eventually may require institutional care, we appreciate that resolution of the issue posed may have a substantial financial effect on many families. A decision that an asset is included as a resource for determining Medicaid eligibility may have the effect of pre-

cluding eligibility, or postponing eligibility until the asset in question has been "spent down" to pay for medical expenses. See *N.J.S.A.* 30:4D-3i(15)(c). We also acknowledge that judicial authority in resolving such issues is tightly circumscribed by the myriad of federal and state statutes and regulations that control virtually every aspect of Medicaid eligibility.

## I

Respondent Sophie Mistrick and Joseph Mistrick were married on November 15, 1952. In October 1994, Sophie was admitted into Wayne View Convalescent Center. At the time of Sophie's institutionalization, the couple owned the following assets: their home in Wayne; an International Security Products GAFCAP 401(k) account in Joseph's name with a balance of $118,809.47; a Vanguard IRA in Joseph's name with a balance of $23,783.25; a savings account in Joseph's name with a balance of $10,251.35; a savings IRA in Joseph's name with a balance of $9,253.62; a credit union account in Joseph's name with a balance of $23,294.90; life insurance in Joseph's name with a total cash surrender value of $15,565.37; and a savings account in Sophie's name with a balance of $34,075.98.

In April 1995, subsequent to Sophie's institutionalization, Joseph retired from his employment at International Specialty Products. During his employment, International Specialty Products had not offered a company pension plan but had established the GAFCAP 401(k) program that Joseph used as a retirement account. As a condition of his retirement, Joseph rolled over the GAFCAP 401(k) into his existing Vanguard IRA account. At his retirement, Joseph received monthly income as follows: $1,220 from Social Security; $178 from an unidentified pension fund; and $1,060 from his IRA.

In August 1995, Joseph made an application on Sophie's behalf to appellant Passaic County Board of Social Services (Board) for institutional Medicaid benefits. Joseph supplied the Board with the necessary documentation concerning assets owned by the

couple and assets owned by Sophie and Joseph individually. Prior to applying for Medicaid benefits, the couple conducted a private resource "spend-down" that substantially diminished their net worth. Joseph retained the house, a community spouse resource allowance, so called by the Medicaid regulations, totaling approximately $24,000, and his Vanguard IRA. The Board denied Sophie's Medicaid application, concluding that Sophie was ineligible for Medicaid benefits because Joseph's IRA was an includable resource for the purpose of determining Medicaid eligibility and that therefore Sophie's available resources exceeded the $2000 eligibility limit.

Sophie requested a hearing to contest the denial of Medicaid benefits. Appellant Division of Medical Assistance & Health (Division) referred the matter to the Office of Administrative Law. An administrative law judge (ALJ) held a plenary hearing and concluded that Joseph's 401(k), which was rolled over into an IRA that was in "a current pay status," was not an available resource and therefore should not have been included in the determination of Medicaid eligibility. The ALJ recommended that the couple's resources be redetermined to exclude the 401(k) that was rolled over into an IRA account held in Joseph's name.

The Board filed exceptions to the ALJ's decision. Sophie filed cross-exceptions. The Director of the Division filed a final decision, in which she adopted the ALJ's findings of fact but did not adopt the ALJ's conclusions of law. The Director concluded that Joseph's IRA was an includable resource for the purpose of determining Sophie's Medicaid eligibility.

Sophie appealed the Director's decision. The Appellate Division reversed and remanded the matter for calculation of the couple's resources without including Joseph's IRA. *Mistrick v. Division of Med. Assistance & Health Servs.*, 299 *N.J.Super.* 76, 84, 690 *A.*2d 651 (App.Div.1997).

The Appellate Division reviewed the Medicaid system, describing the cooperative program between the federal government and participating states that provides medical assistance at public

expense to needy persons. *Id.* at 79, 690 *A.*2d 651. The court noted that state participation requires state Medicaid compliance with Title XIX of the Social Security Act, 42 *U.S.C.A.* §§ 1396–1396v, which provides that participating states must make assistance available to "categorically needy" persons, a term that includes persons receiving categorical aid, such as Aid to Families with Dependent Children (AFDC) and Supplemental Security Income (SSI). *Id.* at 79–80, 690 *A.*2d 651. The federal statute also authorizes states to provide assistance to other classifications of needy persons, "including those persons whose income and resources are too low to meet their medical expenses yet too high to qualify them for cash assistance under SSI or AFDC." *Id.* at 80, 690 *A.*2d 651 (citing 42 *U.S.C.A.* § 1396a(a)(10)(C) and 42 *U.S.C.A.* § 1396d(a)). "This group is known as the 'medically needy.'" *Ibid.* The court noted that New Jersey has elected to participate in the federal Medicaid program and has elected "to provide assistance to medically needy individuals consistent with federal guidelines." *Ibid.* (citing *N.J.S.A.* 30:4D–3i(8)).

The Appellate Division referred to 42 *U.S.C.A.* § 1396a(a)(10)(C)(i)(III), which requires that states providing assistance to the medically needy must prescribe a single standard for determining income and resource eligibility for medically needy individuals, and that the methodology used to determine eligibility must be "no more restrictive" than the methodology used under the SSI program. *Id.* at 80–81, 690 *A.*2d 651. The court considered whether the methodology referred to in 42 *U.S.C.A.* § 1396a(a)(10)(C)(i)(III) "includes the determination of which assets may be included in calculating resource eligibility," stating that if that determination is a matter of methodology, "then it is at once evident that under the 'no more restrictive' proviso, assets which may not be included by the State for determining resource eligibility for SSI may also not be included by the State for determining resource eligibility for medically-needy participants." *Id.* at 81–82, 690 *A.*2d 651.

The court observed that for purposes of SSI, or categorically-needy eligibility, 20 *C.F.R.* § 416.1202(a) specifically excludes from consideration in the eligibility determination pension plans and IRAs in the name of the spouse of the person seeking medical assistance. *Id.* at 82, 690 *A.*2d 651. Thus, the court determined that if Sophie had applied for SSI benefits, Joseph's IRA would not be includable when determining her SSI eligibility. *Ibid.* The court concluded that the SSI "methodology" referred to by § 1396a(a)(10)(C)(i)(III) encompasses the determination of includable and excludable assets. Accordingly, the court held "that the State is precluded by the Supremacy Clause of the United States Constitution from imposing a more restrictive exclusion for the medically needy than for the categorically needy," *ibid.*, and that IRAs are not included for purposes of determining eligibility of a medically needy person because of the "no more restrictive" methodology provision. *Ibid.*

In reaching its conclusion, the court relied on the United States Supreme Court's interpretation of the "same methodology" in *Atkins v. Rivera,* 477 *U.S.* 154, 106 *S.Ct.* 2456, 91 *L. Ed.*2d 131 (1986). *Id.* at 82–83, 690 *A.*2d 651. The *Atkins* Court held that the "same methodology" requirement mandated that states "treat components of income ... similarly for both medically and categorically needy individuals." *Atkins, supra,* 477 *U.S.* at 163, 106 *S.Ct.* at 2461, 91 *L. Ed.*2d at 141. Finding components of income and components of resources congruent, the Appellate Division held that assets excludable when calculating resources for the categorically needy were necessarily excludable when calculating resources for the medically needy. *Mistrick, supra,* 299 *N.J.Super.* at 83, 690 *A.*2d 651. The Appellate Division noted the *Atkins* Court's explanation of the impetus behind § 1396a(a)(10)(C)(i)(III): to allow the states to set different income and resource levels for medically needy applicants, but to prevent states from using eligibility standards unrelated to those used to determine the eligibility of the categorically needy. *Ibid.* (citing *Atkins, supra,* 477 *U.S.* at 165, 106 *S.Ct.* at 2462, 91 *L. Ed.*2d at 142).

Although the New Jersey Medicaid regulations do not specifically exclude a community spouse's pension plans and IRAs from the eligibility determination, the court nevertheless held that pension plans and IRAs were required to be excluded from the determination because of the "no more restrictive methodology" provision. *Ibid.* The court concluded that "[t]he whole point of [the "no more restrictive" provision] is to require the same treatment for the medically needy as for the categorically needy in respect of the methods by which their respective eligibilities are determined. Excludability of assets is part of that method. There may be no disparity." *Id.* at 84, 690 *A.2d* 651.

The Appellate Division denied the Division's motion for reconsideration. We granted the Division's petition for certification. 151 *N.J.* 469, 700 *A.2d* 880 (1997). After oral argument we learned that Sophie Mistrick had died, rendering moot the underlying legal issue. Although ordinarily we decline to decide moot appeals, we occasionally will rule on such matters where they are of substantial importance and are capable of repetition, yet evade review. *Zirger v. General Accident Ins. Co.*, 144 *N.J.* 327, 330, 676 *A.2d* 1065 (1996); *Division of Youth & Family Servs. v. J.B.*, 120 *N.J.* 112, 118–19, 576 *A.2d* 261 (1990); *In re J.I.S. Indus. Serv. Co. Landfill*, 110 *N.J.* 101, 104–05, 539 *A.2d* 1197 (1988). The issue before us is of significant public importance and is capable of repetition whenever a county social services board reviews an application for Medicaid benefits from an institutionalized person whose non-institutionalized spouse has an IRA. Accordingly, we will resolve the issue notwithstanding its mootness.

## II

Medicaid was created to provide medical assistance to the poor at the expense of the public. *Atkins, supra*, 477 *U.S.* at 156, 106 *S.Ct.* at 2458, 91 *L. Ed.2d* at 137; *L.M. v. Division of Med. Assistance & Health Servs.*, 140 *N.J.* 480, 484, 659 *A.2d* 450 (1995). It is an optional cooperative program in which "[t]he Federal Government shares the costs ... with States that elect to partici-

pate in the program." *Atkins, supra,* 477 *U.S.* at 156–57, 106 *S.Ct.* at 2458, 91 *L. Ed.*2d at 137. States that choose to participate are required to comply with Title XIX of the Social Security Act, and the regulations adopted by the Secretary of Health and Human Services. 42 *U.S.C.A.* § 1396a; *Atkins, supra,* 477 *U.S.* at 157, 106 *S.Ct.* at 2458, 91 *L. Ed.*2d at 137.

■ Each participating state must adopt a plan that "includes 'reasonable standards . . . for determining eligibility for and the extent of medical assistance . . . [that is] consistent with the objectives' of the Medicaid program." *L.M., supra,* 140 *N.J.* at 484, 659 *A.*2d 450 (quoting 42 *U.S.C.A.* § 1396a(a)(17)(A)). Each applicant must satisfy the criteria for eligibility established by the state in which the applicant lives. *Id.* at 485, 659 *A.*2d 450 (citing *Schweiker v. Gray Panthers,* 453 *U.S.* 34, 36–37, 101 *S.Ct.* 2633, 2636, 69 *L. Ed.*2d 460, 465 (1981)). New Jersey has elected to participate in the Medicaid program by enacting the New Jersey Medical Assistance and Health Services Act. *N.J.S.A.* 30:4D–1 to –19.1. The Department of Human Services has the responsibility for administering the program. *N.J.S.A.* 30:4D–3c.

■ Participating states are required, under federal law, to provide assistance to the "categorically needy." *L.M., supra,* 140 *N.J.* at 485, 659 *A.*2d 450 (citing 42 *U.S.C.A.* § 1396a(a)(10)(A)(i)). That group includes persons eligible to receive benefits under AFDC or SSI. *See* 42 *U.S.C.A.* § 1396a(a)(10)(A)(i). Congress considered those persons "especially deserving of public assistance because of family circumstances, age, or disability." *Schweiker, supra,* 453 *U.S.* at 37, 101 *S.Ct.* at 2637, 69 *L. Ed.*2d at 466–67 (footnote omitted). In addition, states may also elect to provide Medicaid assistance to the "medically needy," who have income and resources that are insufficient to pay their medical expenses, but are too high to qualify them for AFDC or SSI, and who otherwise meet the nonfinancial eligibility requirements for those programs. *Atkins, supra,* 477 *U.S.* at 157–58, 106 *S.Ct.* at 2459, 91 *L. Ed.*2d at 137; *L.M., supra,* 140 *N.J.* at 487–88, 659 *A.*2d 450. New Jersey has chosen to provide assistance to the medically

needy under its "Medically Needy" program, *N.J.A.C.* 10:70–1.1 to –7.3, by enacting *N.J.S.A.* 30:4D–3i(8).

Additionally, federal law authorizes, at the option of the states, the provision of benefits to "any reasonable categories" of applicants who do not otherwise qualify as categorically or medically needy. 42 *U.S.C.A.* § 1396a(a)(10)(A)(ii); *see Skandalis v. Rowe,* 14 *F.*3d 173, 175 (2d Cir.1994)("The line between mandatory and optional coverage is primarily drawn in § 1396a(a): mandatory coverage is specified in § 1396a(a)(10)(A)(i), and the state options are set forth in subsection (ii)."). The list of "reasonable categories," 42 *U.S.C.A.* § 1396a(a)(10)(A)(ii), includes persons who are in medical institutions for at least thirty consecutive days, who meet resource requirements set by the state, and whose income does not exceed the limitation provided in 42 *U.S.C.A.* § 1396b(f)(4)(C), which sets the ceiling at 300 percent of the benefit rate established by SSI. 42 *U.S.C.A.* § 1396a(a)(10)(A)(ii)(V) effectively imposes an "income cap on these individuals...." *New Mexico Dep't of Human Servs. v. Department of Health and Human Servs. Health Care Fin. Admin.,* 4 *F.*3d 882, 883 (10th Cir.1993). New Jersey provides benefits to those applicants considered "optionally categorically needy" under its "Medicaid Only" program. New Jersey will provide Medicaid benefits under "Medicaid Only" to a married individual seeking nursing facility services if the couple expends "those resources which are not protected for the needs of the community spouse in accordance with [42 *U.S.C.A.* § 1396r–5(c) ] on the costs of long-term care, burial arrangements, and any other expense deemed appropriate and authorized by the commissioner." *N.J.S.A.* 30:4D–3i(15)(c).

States providing assistance to the medically needy must prescribe eligibility standards that are "reasonable" and "comparable for all groups." 42 *U.S.C.A.* § 1396a(a)(17); *Atkins, supra,* 477 *U.S.* at 158, 106 *S.Ct.* at 2459, 91 *L. Ed.*2d at 138. Every participating state plan providing benefits for the medically needy must include

the single standard to be employed in determining income and resource eligibility for all such [covered] groups, and the methodology to be employed in determining such eligibility, which shall be no more restrictive than the methodology which would be employed under the [SSI] program in the case of groups consisting of aged, blind, or disabled individuals [*i.e.*, "categorically needy"] in a State in which such program is in effect, and which shall be no more restrictive than the methodology which would be employed under the appropriate State plan ... to which such group is most closely categorically related. . . .

[42 *U.S.C.A.* § 1396a(a)(10)(C)(i)(III).]

*See also* 42 *U.S.C.A.* § 1396a(r)(2)(A)(providing that methodology for determining eligibility for optionally categorically needy applicants may be less restrictive, but may not be more restrictive, than methodology used to determine eligibility for SSI applicants). A methodology is " 'no more restrictive' if, using the methodology, additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance." 42 *U.S.C.A.* § 1396a(r)(2)(B).

In *Atkins, supra,* the United States Supreme Court considered the meaning of the "same methodology" requirement, the forerunner of the "no more restrictive" methodology requirement. See 477 *U.S.* at 156, 106 *S.Ct.* at 2458, 91 *L. Ed.*2d at 136. Medicaid applicants claimed that the "same methodology" provision required that rather than using a six-month spenddown period for determining medical expenses, the State of Massachusetts had to use a one-month spenddown period, just as the federal regulations provided. *Id.* at 159–60, 106 *S.Ct.* at 2459–60, 91 *L. Ed.*2d at 138–39.

Finding the "same methodology" provision inapplicable in determining the spenddown period, the Court concluded that the " 'same methodology' requirement simply instructs States to treat components of income—e.g., interest or court-ordered support payments—similarly for both medically and categorically needy persons." *Id.* at 163, 106 *S.Ct.* at 2461, 91 *L. Ed.*2d at 141. The Court examined the legislative history of the requirement and noted that the impetus for the requirement was to allow states to use different eligibility levels, but to prohibit states from using income and resource standards that deviated from those used for

AFDC and SSI. *Id.* at 163–65, 106 *S.Ct.* at 2461–62, 91 *L. Ed.*2d at 141–42. The Court concluded that the requirement operated to invalidate "regulations permitting the income and resource standards in State Medicaid plans to deviate from those used in the AFDC and SSI programs in 'such matters as deemed income, interest, court-ordered support payments, and infrequent and irregular income.'" *Id.* at 166, 106 *S.Ct.* at 2463, 91 *L. Ed.*2d at 143. Because the Medicaid Act was silent concerning any requirement regarding spenddown periods, the Court concluded that states were free to determine their own spenddown periods. *Id.* at 167, 106 *S.Ct.* at 2463, 91 *L. Ed.*2d at 143.

### A

Respondent argues that because a federal regulation excludes pension plans and IRAs from the determination of SSI eligibility, and because the "no more restrictive" provision applies, Joseph's IRA similarly must be excluded for purposes of determining her Medicaid eligibility. The Division argues that the "no more restrictive" provision is superseded by the Medicare Catastrophic Coverage Act of 1988 (MCCA). The Appellate Division opinion did not address MCCA. The Division conceded at oral argument before this Court that it did not argue on direct appeal that MCCA supersedes the "no more restrictive" provision, but raised the issue in a motion for reconsideration that was denied.

Congress enacted MCCA to protect married couples when one spouse (the "institutionalized spouse") enters a nursing home by ensuring that the spouse living in the community (the "community spouse") has "sufficient income and resources to live with independence and dignity." *Thomas v. Commissioner of Div. of Med. Assistance,* 425 *Mass.* 738, 682 *N.E.*2d 874, 875 (1997). Prior to the passage of MCCA, when a married person became institutionalized, all of the couple's jointly-held assets were deemed available to the institutionalized spouse and were required to be spent down to the SSI eligibility limits before the institutionalized spouse would be eligible for Medicaid. H.R.Rep. No. 100–105(II), at 65–

67 (1988), *reprinted in* 1988 *U.S.C.C.A.N.* 857, 888–90. That policy had the effect of forcing the community spouse to spend down virtually all of the marital assets before the institutionalized spouse could be eligible for Medicaid and resulted in community spouses having to sue their institutionalized spouses for support or become prematurely institutionalized themselves. See 1988 *U.S.C.C.A.N.* at 892; Torch, *Spousal Impoverishment or Enrichment? An Assessment of Asset and Income Transfers by Medicaid Applicants,* 4 *Elder L.J.* 459, 460–61 (1996).

To prevent impoverishment of community spouses in that manner, Congress enacted the "spousal impoverishment" provisions of MCCA that provide for "special treatment for institutionalized spouses."[1] *See* 42 *U.S.C.A.* § 1396r–5. Those provisions were intended to end the pauperization of the community spouse by allowing that spouse to protect a sufficient, but not excessive, amount of income and resources to meet his or her own needs while the institutionalized spouse was in a nursing home at Medicaid expense. 1988 *U.S.C.C.A.N.* at 888. Congress also recognized that because the allocation of resources depended wholly on whether a resource was in the name of one spouse or the other, couples could shelter their resources in the name of the community spouse while the institutionalized spouse would receive Medicaid coverage. See *Cleary v. Waldman,* 959 *F.Supp.* 222, 229 (D.N.J.1997)(stating that although Medicaid provided care for indigent, public nevertheless needed protection from diversion of public funds). MCCA closed this loophole by considering a couple's resources in their entirety, regardless of the name in which the resources were held. See 121 *Cong. Rec.* H6568–04 (1987)(daily ed. July 22, 1987)(statement of Rep. Tauke)(stating that MCCA would "change the unfair policy which requires non-institutionalized spouses to be impoverished before the institutionalized spouse can receive benefits, and at the same time ...

---

[1] Congress later repealed MCCA through the Medicare Catastrophic Coverage Repeal Act of 1989 (Pub.L. No. 101–234, 103 Stat.1979), but the spousal impoverishment prevention provisions were retained.

ensure[s] that no one escapes contributing a fair share to nursing home care costs").

Under MCCA, when one member of a married couple seeks Medicaid benefits to cover the costs of her nursing home care while her spouse remains living in the community, the institutionalized spouse's eligibility is based on a "snapshot" of the couple's total resources as of the beginning of the first continuous period of institutionalization. See 42 *U.S.C.A.* § 1396r–5(c)(1)(A). Following MCCA, *N.J.A.C.* 10:71–4.8(a)(1) provides that a couple's combined countable resources are determined "as of the first moment of the first day of the month of the current period of institutionalization...." To avoid having to spend down assets to qualify the institutionalized spouse for Medicaid and thus impoverish himself in the process, the community spouse is allowed to keep a "community spouse resource allowance." *See* 42 *U.S.C.A.* § 1396r–5(f)(2). A New Jersey regulation provides that the allowance shall not exceed $76,740. *N.J.A.C.* 10:71–4.8(a)(1). Only resources of the couple in excess of the $76,740 community spouse resource allowance are taken into account in determining the institutionalized spouse's Medicaid eligibility. 42 *U.S.C.A.* § 1396r–5(c)(2)(B); *N.J.A.C.* 10:71–4.8. The remaining resources in excess of the community resource allowance are considered available to the institutionalized spouse, who will be eligible for Medicaid only if those remaining resources are less than or equal to $2,000. *N.J.A.C.* 10:71–4.8(a)(2). Respondent's application for Medicaid benefits was denied by the Passaic County Board of Social Services because the Board found that she, the institutionalized spouse, had more than $2,000 in resources after the allocation of resources to the community spouse authorized by regulation.

MCCA provides as follows:

(a) Special treatment for institutionalized spouses

  (1) Supersedes other provisions

    In determining the eligibility for medical assistance of an institutionalized spouse ... the provisions of this section supersede any other provision of [Subchapter XIX—Grants to States for Medical Assistance Programs, 42 *U.S.C.A.* §§ 1396–1396v] which is inconsistent with them.

. . . .
(3) Does not affect certain determinations

Except as this section specifically provides, this section does not apply to—

(A) the determination of what constitutes income or resources, or

(B) the methodology and standards for determining and evaluating income and resources.

[42 *U.S.C.A.* § 1396r–5(a)(1) to (3).]

MCCA thereafter specifically provides in a subsection entitled "[r]esources defined" that the term "resources" does not include resources excluded under 42 *U.S.C.A.* § 1382b(a) or (d) or resources that would be excluded under § 1382b(a)(2)(A) but for the limitation on total value described in that section. 42 *U.S.C.A.* § 1396r–5(c)(5).

42 *U.S.C.A.* § 1382b(a) and (d) specifically exclude, among other things, the home, household goods and an automobile not in excess of an amount determined to be reasonable by the Commissioner, funds set aside for burial expenses, and "other property which is so essential to the means of self-support of such individual (and such spouse) as to warrant its exclusion, as determined in accordance with and subject to limitations prescribed by the Commissioner of Social Security. . . ." (See related discussion *infra* at 173 n. 2, 712 *A.*2d at 196 n. 2.). The statute does not specifically exclude pensions or IRAs. The applicable New Jersey regulations similarly do not explicitly exclude a community spouse's pension or IRA. See *N.J.A.C.* 10:71–4.4(b)(excluding, for purposes of general Medicaid eligibility, the home, one automobile if "necessary" or if valued at $4,500 or less, personal effects valued at $2,000 or less, cash surrender value of life insurance policy not in excess of $1,500, and value of resources not accessible to individual through no fault of his or her own); *N.J.A.C.* 10:71–4.8(a)(8)(excluding, for purposes of Medicaid eligibility for married individual requiring long-term care, all resources subject to exclusion pursuant to *N.J.A.C.* 10:71–4.4, except automobile and personal effects shall be excluded without regard to value).

Although MCCA, the provisions MCCA incorporates, and the New Jersey regulations that incorporate MCCA do not specifically

exclude pensions or IRAs from the eligibility determination, respondent points to a federal regulation concerning the eligibility determination for SSI benefits that excludes a spouse's pension funds and IRAs from one's assets. 20 *C.F.R.* § 416.1202 provides:

> In the case of an individual who is living with a person not eligible [for SSI benefits] and who is considered to be the husband or wife of such individual ... , such individual's resources shall be deemed to include any resources, not otherwise excluded under this subpart, of such spouse whether or not such resources are available to such individual. In addition to the exclusions listed in s 416.1210[including the home, household goods, an automobile, life insurance, and funds for burial expenses, provided that value does not exceed amounts provided by regulation], pension funds which the ineligible spouse may have are also excluded. "Pension funds" are defined as funds held in individual retirement accounts (IRA), as described by the Internal Revenue Code, or in work-related pension plans (including such plans for self-employed individuals, sometimes referred to as Keogh plans).[2]

Respondent contends that even though she was not applying for SSI benefits, the "no more restrictive" provision, 42 *U.S.C.A.* §§ 1396a(a)(10)(C)(i)(III), 1396a(r)(2)(A), controls and that because the foregoing regulation excludes IRAs from SSI eligibility determinations, the methodology for determining her eligibility can be "no more restrictive" than the methodology applicable to an SSI applicant. Therefore, she argues, Joseph's IRA should be excluded for the purposes of determining her Medicaid eligibility. The Division, however, contends that MCCA renders the "no more restrictive" provision inapplicable.

---

[2] That regulation was adopted not in accordance with the Commissioner's discretionary authority pursuant to 42 *U.S.C.A.* § 1382b(a)(3) to exclude other property that is "so essential to the means of self-support ... as to warrant its exclusion," but rather pursuant to 42 *U.S.C.A.* § 1382c(f)(1), which provides:

> For purposes of determining [SSI] eligibility for and the amount of benefits for any individual who is married and whose spouse is living with him in the same household but is not an eligible spouse, such individual's income and resources shall be deemed to include any income and resources of such spouse, whether or not available to such individual, except to the extent determined by the Commissioner of Social Security to be inequitable under the circumstances.

Thus, the effect of the regulation is that when a married person eligible for SSI lives with his or her spouse who is ineligible for SSI, pensions and IRAs held by the ineligible spouse are to be excluded from the SSI eligibility determination.

MCCA provides that it supersedes any other provision that is inconsistent with it. 42 *U.S.C.A.* § 1396r–5(a)(1). MCCA further indicates that the term "resources" does not include those items excluded from the definition of "resources" pursuant to 42 *U.S.C.A.* § 1382b(a) and (d). 42 *U.S.C.A.* § 1396r–5(c)(5). Those subsections do not exclude IRAs or pension plans from the determination of "resources." However, the SSI regulation, 20 *C.F.R.* § 416.1202, excludes for purposes of determining SSI eligibility IRAs owned by an SSI-ineligible spouse living in the same household. On two grounds, however, we conclude that reliance on that SSI regulation is misplaced.

First, the regulation does not apply generally in determining SSI eligibility, but applies only to exclude IRAs owned by ineligible spouses of SSI-eligible individuals living in the same household. Its narrow application, therefore, does not render the exclusion of IRAs in that specific circumstance a benchmark for determination of eligibility in the case of medically needy or optionally categorically needy applications.

■ Second, even assuming the regulation excluding IRAs for purposes of SSI eligibility had a broader scope, we find the methodology used in that regulation inapplicable here because we conclude that the "no more restrictive" provision is superseded by MCCA. MCCA explicitly provides that it supersedes any provision that is inconsistent with it. For purposes of determining medically needy or optionally categorically needy eligibility, application of a methodology "no more restrictive" than the SSI methodology set forth in 20 *C.F.R.* § 416.1202, which excludes IRAs, would clearly be inconsistent with MCCA, which specifies by reference to 42 *U.S.C.A.* 1382b(a) and (d) what items are excluded from the determination of resources, without excluding IRAs. In that context, the conclusion is inescapable that MCCA supersedes the "no more restrictive" provision. See 42 *U.S.C.A.* §§ 1396a(a)(10)(C)(i)(III), 1396a(r)(2)(A). Thus, MCCA requires the inclusion of the community spouse's IRA in the determination of the institutionalized spouse's resources.

The legislative history of MCCA supports our conclusion. The Senate amendment to the House bill proposed an additional provision concerning the treatment of resources that would have excluded "resources that are necessary to produce income that is available to the community spouse or the family allowance." H.R. Conf. Rep. No. 100–661, at 263 (1988), *reprinted in* 1988 *U.S.C.C.A.N.* 923, 1041. However, the conference agreement "[did] not exclude from countable resources those assets necessary to produce income available to the community spouse or the family allowance." 1988 *U.S.C.C.A.N.* at 1043. Instead, the agreement provided that "either the institutionalized or the community spouse may request a fair hearing as to whether the community spouse resource allowance is adequate to generate sufficient income to raise the community spouse's income to the minimum monthly maintenance needs allowance." *Ibid.* We are confident that had Congress intended MCCA to exclude resources necessary to produce income, such as IRAs, the proposed exclusion would have been adopted.

We repeat that the SSI regulation relied on by respondent, 20 *C.F.R.* § 416.1202, applies only to a spouse eligible for SSI benefits who is living with his or her ineligible spouse. Respondent contends that she and her husband were living together at the time of their resource assessment; the Division contends that they were not. MCCA provides that the "snapshot" assessment of a couple's resources and of the community spouse's share is computed "as of the beginning of the first continuous period of institutionalization ... of the institutionalized spouse." 42 *U.S.C.A.* § 1396r–5(c)(1). An institutionalized spouse is "an individual who ... is in a medical institution or nursing facility ... and is married to a spouse who is not in a medical institution or nursing facility." 42 *U.S.C.A.* § 1396r–5(h)(1). Therefore, by definition an institutionalized spouse cannot be living with a community spouse. However, we note that the dispute between the parties concerning whether the Mistricks were living together is academic. The question is not whether the SSI regulation concerning spouses who live together actually applied, but whether MCCA superseded

the "no more restrictive methodology" provision. Whether the Mistricks were living together at the time of their resource assessment is of no import because we conclude that the "no more restrictive" provision is inconsistent with and therefore is superseded by MCCA.

### B

For purposes of seeking benefits under New Jersey's "Medicaid Only" program, a resource must be "available" in order to be considered in an applicant's eligibility determination. *N.J.A.C.* 10:71-4.1(c). Resources are considered available to an individual when that individual "has the right, authority, or power to liquidate real or personal property, or his or her share of it [or if the] [r]esources have been deemed available to the applicant. . . ." *N.J.A.C.* 10:71-4.1(c).

■ The parties have not addressed whether Joseph's IRA was available within the meaning of the regulation. We note that an IRA holder generally has the right, authority, and power to gain access to the funds in such an account. See *Ernst & Young's Retirement Planning Guide* 84 (1997); *The Vanguard Guide to Planning for Retirement* 184 (3d ed.1998). A Medicaid applicant seeking to argue that an IRA is unavailable would have the burden of proving its unavailability.

### III

As our opinion demonstrates, federal and state statutes and regulations determine the limit on the amount of assets that a community spouse may retain for his own support without rendering his institutionalized spouse ineligible for Medicaid. Whether or not we believe that limit to be adequate is of no moment; the limit is mandatory, unless adjusted after a hearing to an amount sufficient to raise the community spouse's gross income to the maximum authorized level. 42 *U.S.C.A.* § 1396r-5(e)(2)(C); *N.J.A.C.* 10:71-5.7(d). The legislative goal of preventing impover-

ishment of community spouses while insisting on their payment of a fair share of nursing home costs is no doubt difficult to achieve. Based on this record, we infer that in many cases the balance struck may not provide adequate funds to sustain a community spouse at more than a minimal standard of living.

We conclude that Joseph Mistrick's IRA was an includable resource for the purposes of determining Sophie Mistrick's Medicaid eligibility. The judgment of the Appellate Division is reversed.

*For reversal*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.