**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4385-16T4

C.F.J.,

     Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES and HUDSON
COUNTY BOARD OF SOCIAL
SERVICES,

     Respondents-Respondents.

_____

Submitted October 23, 2018 – Decided December 11, 2018

Before Judges Yannotti and Rothstadt.

On appeal from New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

SB2 Inc., attorneys for appellant (John P. Pendergast and Laurie M. Higgins, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent Division of Medical Assistance and Health Services (Melissa H. Raksa, Assistant Attorney

General, of counsel; Patrick Jhoo, Deputy Attorney General, on the brief).

PER CURIAM

C.F.J. appeals from a final administrative decision of the Director of the Division of Medical Assistance and Health Services (DMAHS), which upheld the denial of her applications for Medicaid benefits because she failed to submit certain records required to verify her eligibility for benefits. We affirm.

I.

In June 2014, C.F.J. was admitted to a nursing home in Jersey City. In August 2014, an application for Medicaid benefits was submitted on C.F.J.'s behalf to the Hudson County Board of Social Services, the county welfare agency (CWA). On September 12, 2014, the CWA requested that C.F.J. submit: (1) her Direct Express debit card statements from August 2009 to August 2014; (2) proof that the nursing home is receiving C.F.J.'s social security benefits; (3) a personal-needs accounting by the nursing home; and (4) power-of-attorney documentation. On October 3, 2014, the CWA denied C.F.J.'s application because she had not submitted the requested Direct Express debit card statements and the power-of-attorney documents.

In December 2014, another application for Medicaid benefits was submitted on behalf of C.F.J. to the CWA. On February 23, 2015, the CWA

A-4385-16T4

again requested that C.F.J. submit the aforementioned Direct Express debit card statements and a physician's certification. On March 4, 2015, the CWA denied the application because C.F.J. had not provided the requested information.

C.F.J.'s representative challenged the denials of benefits and requested a hearing. The DMAHS thereafter transmitted the matter to the Office of Administrative Law (OAL) for a hearing before an Administrative Law Judge (ALJ). In May 2015, C.F.J.'s attorney provided the ALJ with copies of some Direct Express statements. The CWA noted, however, that C.F.J. had not submitted all of the Direct Express statements it had requested.

In June 2015, C.F.J.'s attorney issued a subpoena for the missing records to Comerica Bank (Comerica), the issuer of the Direct Express card. On June 25, 2015, C.F.J.'s attorney provided the ALJ with copies of the Direct Express statements for January 2012 through August 2012. In a letter provided in response to the subpoena, Comerica's analyst asserted that statements for C.F.J.'s account were only available from August 2011 through August 2014 because the account was inactive prior to August 2011.

The ALJ filed an initial decision dated August 7, 2015. In the decision, the ALJ noted that a motion for summary decision had been made. The ALJ observed that generally the CWA and the applicant both have responsibilities in

the Medicaid application process, and the applicant must assist the CWA in securing necessary records to determine Medicaid eligibility.

The ALJ stated that under N.J.A.C. 10:71-2.3(c), the CWA may continue the application in pending status to afford an applicant additional time to develop evidence in support of Medicaid eligibility. The ALJ noted that C.F.J. and her nursing home had not been able to provide the requested Direct Express statements. According to the ALJ, C.F.J. and the nursing home required the assistance of an attorney, who eventually was able to obtain the Direct Express statements after issuing a subpoena.

The ALJ concluded that the CWA erred by denying the application because C.F.J. and the nursing home had difficulty obtaining the Direct Express statements and the records had been provided during the appeal process. The ALJ vacated the denial of Medicaid benefits and remanded the matter to the CWA to process C.F.J.'s application.

The Director of the DMAHS reviewed the ALJ's opinion, and on September 17, 2015, issued an interim decision on the appeal. The Director noted that it was not clear from the record which party had filed the motion for summary decision, and the briefs submitted by the parties did not contain a statement of material facts. The Director also noted that the parties had not

presented the ALJ with supporting affidavits in support of their respective arguments. The Director reversed the ALJ's initial decision and remanded the matter to the OAL for further proceedings "to determine whether the parties fulfilled their obligations with regard to the Medicaid application process."

The ALJ conducted the remand hearing and issued another decision dated January 31, 2017. The ALJ observed that "[t]he CWA is required to verify all factors related to eligibility, including sources of income and resources. N.J.A.C. 10:72-2.3(a)." The ALJ stated that Congress had passed legislation requiring all participating states to implement electronic asset verification systems (AVS) so that state agencies participating in the Medicaid program could obtain information regarding the eligibility of applicants for benefits.

The ALJ also stated that caseworkers for a CWA could obtain information about a Medicaid applicant using the Public Assistance Reporting Information System (PARIS). The ALJ found that if a caseworker could not obtain information electronically using AVS or PARIS, federal law "requires" the caseworker to request the information directly from other state and federal agencies or third-party sources.

The ALJ observed that federal law "prohibits" caseworkers from requiring applicants to obtain verifications of information if they are readily available

through an electronic system or from another source. The ALJ stated that under the applicable federal regulations, state Medicaid agencies have an affirmative duty to obtain certain information regarding an applicant's eligibility for Medicaid benefits, and these agencies may not ask applicants to provide additional information unless it is not available electronically or from other sources.

The ALJ found that in this case, the caseworker: (1) did not seek to obtain C.F.J.'s Direct Express statements electronically through an AVS or PARIS; (2) did not attempt to obtain this information from a secondary source; and (3) erred by placing the entire burden of providing this information on C.F.J. The ALJ concluded that the CWA violated federal and state Medicaid regulations because it "failed to make any attempt to obtain the verification it needed to process C.F.J.'s Medicaid applications." The ALJ reversed the denial of C.F.J.'s application.

On April 27, 2017, the Director issued her final decision. The Director noted that the ALJ found the caseworker was obligated to obtain C.F.J.'s Direct Express records through an AVS or PARIS, but New Jersey had not implemented its AVS system until July 2016, which was after the CWA had denied the applications. The Director nevertheless pointed out that there was a

question as to whether the Direct Express records would even be available through the AVS system. The Director observed that the Direct Express website indicates that federal privacy laws prohibit government agencies from obtaining information about an individual's account without the individual's consent.

The Director found that there was no evidence that C.F.J. or her representative made any attempt to obtain the requested Direct Express records until June 4, 2015, which was well after the motion for summary decision was presented to the ALJ. The Director found that C.F.J. "would [have been] able to access her statements and provide them to Hudson County" had she attempted to do so.

The Director also noted that pursuant to N.J.A.C. 10:71-2.3(a), CWAs must determine Medicaid eligibility for elderly applicants within forty-five days after the application is submitted. The Director stated that the regulation allows that timeframe to be extended when "exceptional circumstances" prevent the processing of the application within the prescribed time limits. The Director stated that "[t]here is simply nothing in the record to demonstrate that there were exceptional circumstances warranting additional time to provide the requested verifications."

The Director concluded that the CWA correctly denied C.F.J.'s applications for Medicaid benefits because she failed to provide the information required to verify her eligibility within the time required by regulations. This appeal followed.

## II.

We note initially that the scope of our review in an appeal from a final decision of a state administrative agency is limited. Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009). An agency's decision will not be set aside unless the decision is arbitrary, capricious, or unreasonable, or lacks fair support in the record. Id. at 9-10; see also In re Herrmann, 192 N.J. 19, 27-28 (2007). In reviewing the agency's decision, we consider

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Circus Liquors, 199 N.J. at 10 (citing Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

When considering these factors, we must defer to the agency's "expertise and superior knowledge of a particular field." Ibid. (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). Furthermore, deference to an agency's decision "is particularly appropriate" when the matter involves the interpretation and application of the agency's own regulations. R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting I.L. v. N.J. Dep't of Human Servs., Div. of Medical Assistance & Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006)).

"Medicaid is a federal-state program 'created to provide medical assistance to the poor at the expense of the public.'" Estate of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 217 (App. Div. 2004) (quoting Mistrick v. Div. of Med. Assistance & Health Servs., 154 N.J. 158, 165 (1998)). States that participate in the Medicaid program must adopt assistance plans that comply with federal law. Ibid. (citing Harris v. McRae, 448 U.S. 297, 300-01 (1980)). New Jersey has elected to participate in the program, through the enactment of the Medical Assistance and Health Services Act. N.J.S.A. 30:4D-1 to -42.

Under the Act and the implementing regulations, a local CWA reviews applications for Medicaid benefits. N.J.S.A. 30:4D-7(a); N.J.A.C. 10:71-2.2(a);

N.J.A.C. 10:71-3.15.  When doing so, the CWA considers an applicant's income and resources.  N.J.A.C. 10:71-4.10(b)(3).  The applicant is required to provide the CWA with verification of his or her resources during a specified "look-back" period.  N.J.A.C. 10:71-4.10.  The CWA must process the applications of elderly applicants within forty-five days, except in unusual or exceptional circumstances.  N.J.A.C. 10:71-2.3(a); 42 C.F.R. § 435.912(c)(3).

III.

On appeal, C.F.J. first argues that the CWA violated federal law by failing to obtain her Direct Express debit card statements through an AVS.  We disagree.

Federal regulations provide that a state Medicaid agency "must request and use information relevant to verifying an individual's eligibility for Medicaid in accordance with § 435.948 through § 435.956 of this subpart."  42 C.F.R. § 435.945(b).  State Medicaid agencies must request certain information if such information is "useful to verifying" an applicant's eligibility for benefits.  42 C.F.R. § 435.948(a).  The agency is required to request

> (1) [i]nformation related to wages, net earnings from self-employment, unearned income and resources from the State Wage Information Collection Agency (SWICA), the Internal Revenue Service (IRS), the Social Security Administration (SSA), the agencies administering the State unemployment compensation

10

laws, the State-administered supplementary payment programs under section 1616(a) of the Act, and any State program administered under a plan approved under Titles I, X, XIV, or XVI of the Act; and (2) Information related to eligibility or enrollment from the Supplemental Nutrition Assistance Program, the State program funded under part A of title IV of the Act, and other insurance affordability programs.

[42 C.F.R. § 435.948(a)(1)-(2).]

The federal regulations further provide that "[t]o the extent that the information identified in paragraph (a) of this section is available through the electronic service established in accordance with § 435.949 of this subpart, the [state Medicaid] agency must obtain the information through such service." 42 C.F.R. § 435.948(b). A state Medicaid agency may not require additional verifications when the information is available electronically. 42 C.F.R. § 435.952(c). However, this restriction applies only to the information that the agency is required to request under 42 C.F.R. § 435.948, 42 C.F.R. § 435.949, and 42 C.F.R. § 435.956. Ibid.

Notwithstanding C.F.J.'s arguments to the contrary, the federal regulations did not require the CWA to obtain C.F.J.'s Direct Express debit card statements electronically. As the record shows, when the CWA reviewed C.F.J.'s applications, New Jersey's AVS was not operational. C.F.J. contends New Jersey was not in compliance with the federal mandate, which required the State

11

to establish an AVS by the end of the federal fiscal year 2009, but that is beside the point. The AVS had not been established and the records could not be obtained through that source.

In any event, there is no indication that the CWA could have obtained C.F.J.'s Direct Express statements through the AVS even if it had been functioning. As the Director noted in her decision, the Direct Express website indicates that federal privacy laws may preclude Direct Express from providing government agencies with information about an individual's account without the individual's consent.

Furthermore, as we noted previously, 42 C.F.R. § 435.948 requires state Medicaid agencies to obtain information about an applicant's wages, net earnings from self-employment, and unearned income from certain specified sources, such as the IRS, the SSA, or other federal and state agencies. Bank records like the Direct Express debit card statements at issue here do not come within the purview of 42 C.F.R. § 435.948.

In addition, 42 C.F.R. § 435.949 did not require the CWA to obtain the Direct Express debit card statements directly from Comerica, the issuing bank. The regulation requires states to verify information with, or obtain information from certain federal agencies, if available through an electronic service

established by the federal government.  Ibid.  C.F.J.'s bank records were not available through that source.  Moreover, 42 C.F.R. § 435.956 requires state Medicaid agencies to verify an applicant's citizenship and immigration status through an electronic service established by the federal government or some alternative source.  The regulation pertains to non-financial information.  It does not apply to an applicant's bank records, such as the Direct Express statements at issue here.

Thus, the Director correctly found that C.F.J. had the burden of providing the Direct Express statements within the time required for the CWA to process her applications.  The CWA properly determined that a review of C.F.J.'s Direct Express debit card statements was necessary.  However, the Direct Express records were not available through an electronic service, and the CWA was not required to obtain them directly.  The CWA acted consistently with federal and state Medicaid regulations by requesting C.F.J. to provide the records.

IV.

Next, C.F.J. argues that the CWA violated state Medicaid regulations by failing to "assist" her in completing the application.  We cannot agree.

In support of her argument, C.F.J. relies upon N.J.A.C. 10:71-2.10, which addresses a caseworker's "[c]ollateral investigation" of a Medicaid application.

The regulation states that a collateral investigation consists of "contacts with individuals other than members of [the] applicant's immediate household, made with the knowledge and consent of the applicant(s)." N.J.A.C. 10:71-2.10(a). The regulation also provides that "[t]he primary purpose of [the] collateral contacts is to verify, supplement[,] or clarify essential information." N.J.A.C. 10:71-2.10(b).

The regulation therefore indicates that a caseworker may contact certain individuals to verify information that is deemed essential to the CWA's eligibility determination, but such contacts may only be made with the applicant's "knowledge and consent." N.J.A.C. 10:71-2.10(a). The regulation does not require a caseworker to obtain an applicant's debit card statements directly from an issuing bank.

In addition, C.F.J. relies upon N.J.A.C. 10:71-4.2(b)(3), which states that "[t]he CWA shall verify the existence or nonexistence of any cash, savings[,] or checking accounts[.]" The regulation also states that "[v]erification shall be accomplished through contact with financial institutions[.]" Ibid. The regulation provides that at a minimum, "the CWA shall contact those financial institutions . . . which currently provide or previously provided services to the applicant." Ibid.

Therefore, N.J.A.C. 10:71-4.2(b)(3) only requires the CWA to contact financial institutions to verify the existence of an applicant's accounts. The regulation does not, however, require a caseworker to obtain copies of any records directly from a financial institution.

C.F.J. also relies upon N.J.A.C. 10:71-4.1(d)(3), which provides that "[t]he CWA shall verify the equity value of resources through appropriate and credible sources." The regulation also states that "[i]f necessary, the applicant shall provide written authorization allowing the CWA to secure the appropriate information." N.J.A.C. 10:71-4.1(d)(3)(i).

This regulation therefore requires the CWA to verify the equity value of certain resources, but states that the applicant must provide the necessary authorization to allow the agency to do so. The regulation does not, however, require the CWA to obtain records, such as the debit card statements at issue in this case.

Accordingly, we reject C.F.J.'s contention that the CWA violated State Medicaid regulations by failing to "assist" C.F.J complete her application. The CWA reasonably assisted C.F.J. in completing her application by identifying the bank statements required and by asking that she provide them. The record shows

15

that C.F.J. could have obtained the records. Indeed, her own attorney was able to do so by issuing a subpoena.

IV.

C.F.J. further argues that in making the final decision on her Medicaid application, the Director should have considered the Direct Express statements that her representatives obtained during the pendency of the administrative appeal and presented to the ALJ. Again, we disagree.

Here, the issue before the Director was whether C.F.J. had provided the CWA with the information required to establish her eligibility for Medicaid benefits in a timely manner. The record shows that C.F.J. failed to present all of the Direct Express debit card statements the CWA had requested within the time specified for the CWA to process the applications.

C.F.J.'s administrative appeal did not extend the time for C.F.J. to submit the information the CWA had requested, nor did the appeal extend the time within which the CWA was required to process the applications. The Director had to decide the administrative appeal based on the information that C.F.J. presented to the CWA before the CWA issued its decision denying benefits.

16

We therefore conclude the Director did not err by deciding the appeal based on the evidence that C.F.J. and her representatives presented to the CWA before the CWA denied her applications.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION