945 A.2d 109 (2008)
399 N.J. Super. 566
N.E., Petitioner-Appellant,
v.
NEW JERSEY DIVISION OF MEDICAL ASSISTANCE and Health Services and Somerset County Board of Social Services, Respondents-Respondents.
Docket No. A-2276-06T2.
Superior Court of New Jersey, Appellate Division.
Argued January 8, 2008.
Decided April 10, 2008.
*110 John J. Brogan, Shrewsbury, argued the cause for appellant (Brogan, Brogan, Fanuele & Schmerler, attorneys; Mr. Brogan, on the brief).
Stephanie Beaty, Deputy Attorney General, argued the cause for respondents (Anne Milgram, Attorney General, attorney; Patrick DeAlmeida, Assistant Attorney General, of counsel; Ms. Beaty, on the brief).
Mauro, Savo, Camerino & Grant, P.A., Somerville, attorneys for respondent Somerset County Board of Social Services, join in the brief of respondent New Jersey Division of Medical Assistance and Health Services.
Before Judges SKILLMAN, YANNOTTI and LeWINN.
*111 The opinion of the court was delivered by YANNOTTI, J.A.D.
This is an appeal from a final determination of the Director of the Division of Medical Assistance and Health Services (Director), which found that N.E. was not eligible for "Medicaid Only" benefits. For the reasons that follow, we affirm.

I.
On December 12, 2004, N.E. was hospitalized at Monmouth Medical Center after suffering a serious hemorrhage. He was transported to the HealthSouth Rehabilitation Hospital on December 31, 2004, and on February 28, 2005, he was transferred to the Willow Creek Rehabilitation and Care Center, where he remained until his death on December 28, 2006. On May 27, 2005, N.E.'s spouse, D.E., filed an application on N.E.'s behalf with the Somerset County Board of Social Services (Board) seeking Medicaid Only benefits,
As of May 1, 2005, N.E. and D.E. had combined countable resources in the amount of $206,734.55, which included an individual retirement account (IRA) in N.E.'s name with a balance of $196,857.10. Pursuant to a State regulation then in effect, D.E. was permitted to retain $92,760 of the couple's countable resources as her "community spouse resource allowance" or CSRA. This left N.E. with available resources in the amount of $113,974.55. The Board issued a determination dated August 12, 2005, denying the application because an institutionalized spouse is only eligible for Medicaid Only benefits if his "remaining resources are less than or equal to $2,000[.]" N.J.A.C. 10:71-4.8(a)(2).
N.E. filed a request for a fair hearing pursuant to N.J.A.C. 10:71-8.4(a), and challenged the Board's determination. The matter was referred to the Office of Administrative Law for a hearing before an administrative law judge (ALJ). In that proceeding, N.E. argued that all of his remaining resources should be transferred to D.E. to generate sufficient income to meet the deficit in her "minimum monthly maintenance needs allowance" or MMMNA, thereby making N.E. Medicaid-eligible as of May 1, 2005. In response, the Board asserted, among other things, that the transfer of N.E.'s remaining resources was not permitted under the State's regulations because N.E.'s income had to be applied first to the deficit in D.E.'s MMMNA and, furthermore, N.E. had been receiving social security disability payments since June 2005 that were sufficient to address the shortfall in D.E.'s MMMNA.
The ALJ issued an initial decision dated August 17, 2006. The ALJ found that the State's regulations require that an applicant's eligibility be determined based upon the resources available to the institutionalized spouse as of "the first moment of the first day of the month" in which the application is submitted. N.J.A.C. 10:71-4.8(a)(2). The ALJ stated that, under the regulations, the agency "takes a snapshot of the couple's finances" as of that date. The ALJ found that "[s]ince [N.E.'s] Modal [s]ecurity benefits were not awarded until June 2005, they have no relevance to whether [N.E.] was resource eligible on May 1, 2005."
The ALJ further found that all of N.E.'s available resources were required to generate sufficient income to meet the shortfall in D.E.'s MMMNA. The ALJ therefore determined that D.E. was "entitled to [N.E.'s] remaining resource balances so that [D.E.] and her family may be provided for under the current regulations." For these reasons, the ALJ concluded that N.E. did not have any excess resources as *112 of May 1, 2005, and consequently he was eligible for Medicaid benefits on that date.
The Board filed exceptions to the ALJ's initial decision with the Director, who issued a final decision dated November 15, 2006, in which she concluded that the ALJ erred by finding N.E. Medicaid-eligible. The Director noted that, under the State's Medicaid regulations, N.E.'s eligibility for Medicaid benefits must be based on the amount of his countable resources that remained after the deduction of D.E.'s CSRA, and that determination had to be made based on the couple's resources as of May 1, 2005. On that date, after deduction of the amount prescribed for D.E.'s CSRA, N.E. had resources that exceeded the maximum permitted. The Director further noted that in June of 2005, N.E. began to receive social security disability benefits. She. concluded that the ALJ erred by "reformulating [the] CSRA" as of May 1, 2005 and granting D.E. "a larger share of [the couple's] resources" without taking into account N.E.'s disability payments that were sufficient "to make up the shortfall" in D.E.'s MMMNA. This appeal followed.

II.
We begin our consideration of the appeal with a review of the pertinent statutes and regulations that govern eligibility for Medicaid Only benefits.
"Medicaid was created to provide medical assistance to the poor at the expense of the public." Mistrick v. Div. of Med. Assistance & Health Servs., 154 N.J. 158, 165, 712 A.2d 188 (1998) (citing Atkins v. Rivera, 477 U.S. 154, 156, 106 S.Ct. 2456, 2458, 91 L.Ed.2d 131, 137 (1986)). Medicaid is an "optional cooperative program in which `[t]he Federal Government shares the costs . . . with States that elect to participate in the program.'" Id. at 165-66, 712 A.2d 188 (quoting Atkins, supra, 477 U.S. at 156-57, 106 S.Ct. at 2458, 91 L.Ed.2d at 137). Participating states "are required to comply with Title XIX of the Social Security Act, and the regulations adopted by the Secretary of Health and Human Services." Id. at 166, 712 A.2d 188 (citing Atkins, supra, 477 U.S. at 157, 106 S.Ct. at 2458, 91 L.Ed.2d at 137). New Jersey has elected to participate in the program by enacting the Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5.
States that participate in the program are required to provide medical assistance to the "categorically needy," who are persons eligible to receive Aid to Families with Dependent Children (AFDC) and Supplemental Security Income (SSI). Id. at 166, 712 A.2d 188. Participating states also may elect to provide benefits to persons who are "medically needy." These are individuals "who have income and resources that are insufficient to pay their medical expenses, but are too high to qualify them for AFDC or SSI, and who otherwise meet the nonfinancial eligibility requirements for those programs." Ibid. New Jersey provides Medicaid benefits to the "medically needy." Id. at 166-67, 712 A.2d 188 (citing N.J.S.A 30:4D-3i(8)).
In addition, states that participate in the Medicaid program have the option to provide benefits to any "reasonable categories" of persons who do not qualify as "categorically needy" or "medically needy." Id. at 167, 712 A.2d 188 (citing 42 U.S.C.A. § 1396a(a)(10)(A)(ii)). One such category includes persons who are in medical institutions for at least thirty consecutive days and meet certain resource and income requirements. Ibid.
New Jersey provides benefits to these individuals under its Medicaid Only program. Ibid. Medicaid benefits are available when a married individual seeks services *113 at a nursing facility. In order to qualify for Medicaid, the couple must spend down their available resources on the cost of care and other expenses. However, the couple is permitted to reserve a specified amount of their resources and income for the needs of the community spouse. Ibid.
Congress enacted the Medicare Catastrophic Coverage Act of 1988, Pub.L. No. 100-360, 102 Stat. 683 (1988) (MCCA), to ensure that the community spouse has sufficient income and resources when his or her spouse is institutionalized. Id. at 169, 712 A.2d 188. Prior to the enactment of the MCCA, "when a married person became institutionalized, all of the couple's jointly-held assets were deemed available to the institutionalized spouse and were required to be spent down to the SSI eligibility limits before the institutionalized spouse would be eligible for Medicaid." Ibid.
Congress included the "spousal impoverishment" provisions in the MCCA to provide "special treatment" for institutionalized individuals and their spouses. Id. at 170, 712 A.2d 188 (citing 42 U.S.C.A. § 1396r-5).[1] These provisions were intended "to end the pauperization of the community spouse by allowing that spouse to protect a sufficient, but not excessive, amount of income and resources to meet his or her own needs while the institutionalized spouse was in a nursing home at Medicaid expense." Ibid.
The MCCA provides that when a married individual seeks Medicaid benefits to pay for the cost of care in a nursing home, that person's eligibility for benefits is determined based on the couple's resources "as of the beginning of the first continuous period of institutionalization." Id. at 171, 712 A.2d 188 (citing 42 U.S.C.A. § 1396r-5(c)(1)(A)). The State's Medicaid Only regulations accordingly provide that in determining Medicaid eligibility, the amount of couple's countable resources is determined "as of the first moment of the first day of the month of the current period of institutionalization[.]" N.J.A.C. 10:71-4.8(a)(1).
Under the MCCA, the community spouse is permitted to retain a share of the couple's combined countable resources, which is the "community spouse resource allowance" or CSRA. 42 U.S.C.A. § 1396r-5(f)(2). The maximum amount of the CSRA is set forth in N.J.A.C. 10:71-4.8(a)(1).[2] The only resources that are considered in determining the Medicaid eligibility of the institutionalized spouse are those that exceed the CSRA. Mistrick, supra, 154 N.J. at 171, 712 A.2d 188 (citing 42 U.S.C.A. § 1396r-5(c)(2)(B) and N.J.A.C. 10:71-4.8). Those resources are deemed to be available to the institutionalized spouse, and he or she will only be eligible for Medicaid benefits if they are less than or equal to $2,000. N.J.A.C. 10:71-4.8(a)(2).
In addition to allocating the couple's resources between the institutionalized spouse and the community spouse, the "spousal impoverishment" provisions of the MCCA govern the allocation of the couple's income. In general, the income of the community spouse is not considered *114 available to the institutional spouse. 42 U.S.C.A. § 1396r-5(b)(1). Furthermore, income paid solely in the name of one spouse is not available to the other spouse. 42 U.S.C.A. § 1396r-5(b)(2).
However, the MCCA provides that the community spouse is entitled to a minimum monthly allowance of income for her maintenance needs, an amount that is referred to as the MMMNA. 42 U.S.C.A. § 1396r-5(d)(3). The MCCA further provides that if the community spouse's income is less than the MMMNA, the amount of the shortfall is deducted from the income of the institutionalized spouse. 42 U.S.C.A. § 1396r-5(d)(1)(B). The deduction is called the "community spouse monthly income allowance" or CSMIA. Ibid.
The MCCA additionally provides for a "fair hearing" at which the couple can contest the various components of a state's eligibility determination. 42 U.S.C.A. § 1396r-5(e). At the hearing, the couple may seek an increase in the CSRA. The MCCA states in pertinent part that, "[i]f either . . . spouse establishes that the [CSRA] (in relation to the amount of income generated by such an allowance) is inadequate to raise the community spouse's income to the [MMMNA], there shall be substituted, for the [CSRA] under subsection (f)(2) an amount adequate to provide [the MMMNA]." 42 U.S.C.A. § 1396r-5(e)(2)(C).
In determining whether to increase the CSRA pursuant to 42 U.S.C.A. § 1396r-5(e)(2)(C), the participating states may employ either the "income-first" or the "resources-first" methodology. Wisconsin Dep't. of Health v. Blumer, 534 U.S. 473, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002). Under the "income-first" approach, the monthly income of the institutional spouse is transferred to make up any shortfall in the community spouse's MMMNA before any of the institutional spouse's countable resources may be reallocated to the community spouse. Id. at 484, 122 S.Ct. at 969, 151 L.Ed.2d at 946. On the other hand, the "resources-first" approach allows the transfer of the institutionalized spouse's resources to the community spouse before the institutionalized spouse's income. Id. at 484, 122 S.Ct. at 969, 151 L.Ed.2d at 946-47.
New Jersey had adopted the "income-first" approach. Cleary v. Waldman, 167 F.3d 801, 806 (3d Cir.1999). The State's regulations therefore provide that in a fair hearing requested under N.J.A.C. 10:71-8.4, either spouse may seek the reallocation of the couple's resources if it is shown that "the income generated by the community spouse's share of the couple's resources is inadequate to raise the community spouse's income (together with the community spouse maintenance deduction) to the maximum authorized level[.]" N.J.A.C. 10:71-5.7(d). Because the "community spouse maintenance deduction" includes income transferred from the institutionalized spouse, the regulation requires that the institutionalized spouse's income be transferred to the community spouse before any of the institutionalized spouse's remaining resources may be allocated to the community spouse. Cleary, supra, 167 F.3d at 806-07.

III.
We turn to the specific contentions raised in this appeal. The parties stipulated that D.E.'s standard MMMNA was $1,562. From that amount, the ALJ deducted $443.55, which was the amount that D.E's gross monthly income exceeded her so-called "Excess Shelter Allowance," in accordance with N.J.A.C. 10:71-5.7(c). The ALJ then added $922, which represented a maintenance allowance for the couple's two children who are under twenty-one *115 years of age, as permitted by N.J.A.C. 10:71-5.7(g). The ALJ also added the income that had been earned as interest on N.E.'s IRA. The ALJ thus found that there was a deficit in D.E.'s MMMNA in the amount of $1,837.03. The Director did not make a contrary finding of fact.
Appellant contends, however, that D.E.'s MMMNA shortfall was $2,040.25. Essentially, the difference is the amount of the income earned on N.E.'s IRA. The ALJ found that the income from the IRA must be credited to D.E., thereby reducing the amount of her MMMNA shortfall. We are convinced that this treatment of the IRA income is entirely consistent with N.J.A.C. 10:71-5.7(c). The record shows that the IRA income was N.E.'s income. Under the regulation, that income had to be allocated to D.E., and it reduced the amount of her MMMNA shortfall to $1,837.03.
Appellant next argues that D.E. was entitled to the reallocation of all of N.E.'s remaining resources in order to produce sufficient income to make up the deficit in her MMMNA. Appellant contends that the Director erred by first applying N.E.'s monthly social security disability benefits of $1,990 to D.E.'s MMMNA deficit because N.E. was not receiving those payments on May 1, 2005, the date as of which the couple's resources were allocated and N.E.'s Medicaid eligibility was determined.[3]
In our view, the Director correctly rejected these arguments. The Director properly determined that appellant's contentions are inconsistent with the "income-first" approach that New Jersey had adopted for its Medicaid Only program. As we explained previously, the State's regulations provide that, if there is a shortfall in the community spouse's MMMNA, the shortfall must be addressed with the income of the institutionalized spouse before any of the institutionalized spouse's remaining resources may be allocated to the community spouse.
Furthermore, the Director correctly found that the income subject to transfer from the institutionalized spouse is not limited to income that the institutionalized spouse was earning as of the date when the couple's resources are allocated for purposes of determining whether the institutionalized spouse is eligible for Medicaid. Rather, New Jersey's regulations provide that the community spouse's MMMNA deficit must be made up not only with transfers of income that the institutionalized spouse is earning on that date, but also with any income that the institutionalized spouse is reasonably expected to earn thereafter.
The record shows that N.E. began receiving social security benefits in June 2005, and it was clear that N.E. would continue to receive those benefits. Therefore, N.E.'s social security benefits had to be applied to D.E.'s MMMNA deficit before any of N.E.'s remaining resources could be allocated to D.E. to meet the shortfall in her MMMNA.
The Director's determination on this issue is squarely in accord with the Supreme Court's decision in Blunter. There, the Court explained that in a fair hearing under 42 U.S.C.A. § 1396r-5(e)(2)(C), *116 either spouse may seek the transfer of additional resources from the institutionalized spouse in order to provide sufficient income for the maintenance needs of the community spouse. Blumer, supra, 534 U.S. at 483, 122 S.Ct. at 969, 151 L.Ed.2d at 946. However, in a state that employs the "income first" approach, the income of the institutionalized spouse first must be transferred to the community spouse before the CSRA may be increased by a transfer of the institutionalized spouse's resources. This includes the income that the institutionalized spouse is earning at the time of the fair hearing as well as the "potential posteligibility income transfer" from that spouse. Id. at 484, 122 S.Ct. at 969, 151 L.Ed.2d at 946.
The Court in Blumer noted that although the fair hearing is conducted prior to Medicaid eligibility, the purpose of that proceeding "is to anticipate the posteligibility financial situation of the couple. The procedure seeks to project what the community spouse's income will be when the institutionalized spouse becomes eligible." Id. at 491, 122 S.Ct. at 973, 151 L.Ed.2d at 951. The Court emphasized that in a fair hearing, "[t]he hearing officer must measure that projected income against the MMMNA, a standard that, like the CSMIA, is operative only posteligibility." Ibid.
Therefore, the Director correctly concluded that under the "income-first" approach, before any of N.E.'s share of the couple's countable resources could be allocated to D.E. to meet the shortfall in her MMMNA, N.E.'s social security benefits had to be applied to that deficit. Moreover, because N.E.'s monthly social security disability benefits were sufficient to meet the MMMNA deficit, there was no basis for increasing D.E.'s share of the couple's countable resources beyond the limits established by N.J.A.C. 10:71-4.8(a)(1). Accordingly, the Director correctly found that N.E. was not eligible for Medicaid as of May 1, 2005. On that date, N.E. had resources of more than $113,000, and that exceeded the maximum amount permitted by N.J.A.C. 10:71-4.5(c).
Affirmed.
NOTES
[1] Although certain provisions of the MCCA were repealed by the Medicare Catastrophic Coverage Repeal Act of 1989, Pub.L. No. 101-234, 103 Stat.1979 (1989), the "spousal impoverishment" provisions were retained. Ibid.
[2] The amount is changed periodically as required by 42 U.S.C.A. § 1396r-5(g). In May 2005, when N.E. submitted his application, the amount was $92,760. 36 N.J.R. 4982(a) (November 1, 2004). The amount was later increased to $95,100. 38 N.J.R. 4712(a) (November 6, 2006).
[3] Although N.J.A.C. 10:71-4.8(a)(1) provides that the amount of the couple's countable resources are determined "as of the first moment of the first day of the month of the current period of institutionalization," N.J.A.C. 10:71-4.8(a)(2) states that the "resource eligibility of the institutionalized spouse" is determined by deducting the community spouse's share of the resources "from the couple's combined resources as of the first moment of the first day of the month of [the] application for Medicaid."