**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0077-16T4

A.R.,

    Petitioner-Appellant,

v.

DIVISION OF MEDICAL ASSISTANCE
AND HEALTH SERVICES and OCEAN
COUNTY BOARD OF SOCIAL SERVICES,

    Respondents-Respondents.

_____

        Argued January 24, 2018 — Decided July 17, 2018

        Before Judges Koblitz and Suter.

        On appeal from the Division of Medical
        Assistance and Health Services, Department of
        Human Services.

        Rodney J. Alberto argued the cause for
        appellant (The Alberto Brothers Law Firm,
        attorneys; Rodney J. Alberto, on the brief).

        Patrick Jhoo, Deputy Attorney General, argued
        the cause for respondent (Gurbir S. Grewal,
        Attorney General, attorney; Patrick Jhoo, on
        the brief).

PER CURIAM

A.R. appeals from the July 22, 2016 final decision of the New Jersey Department of Human Services, Division of Medical Assistance and Health Services (DMAHS), which adopted the decision of the Administrative Law Judge (ALJ), affirming the denial of A.R.'s application for Medicaid benefits for failure to verify certain financial information. We affirm the denial.

I.

A.R. applied for Medicaid on February 13, 2015, through a representative from Senior Planning Services (SPS). That application referenced an investment account that A.R. held with PNC Bank. On the same day that A.R. applied, the Ocean County Board of Social Services (Board) issued a written request that "[a]ny and all pertinent verifications of all resources . . . (bank accounts, C.D.'s . . . annuities . . .) [o]pened or closed in the last [five] years prior to application" be provided to it in three weeks. Information submitted to the Board showed that on December 31, 2010, A.R.'s PNC investment account had a balance of $56,216.20, that the account balance increased by March 31, 2011, to $108,622.10, and that on April 30, 2011, the account had a zero balance. This financial activity had taken place within the five-year look back period. See N.J.A.C. 10:71-4.10(b)(9).

The Board requested verification of the activity in this account. In a June 11, 2015 letter to SPS, the Board provided a

2

list of information or documents that were necessary for A.R. to establish Medicaid eligibility. The Board noted the PNC investment account had "increased in value (almost double)" and asked SPS to "[p]rovide verification of this increase" within the next two weeks.

On June 25, 2015, SPS wrote to the Board advising that "an advisor at PNC" told it that the PNC investment account statement showed a mistake. SPS explained that A.R. held no assets in PNC. "The only thing in the account was the annuity held with Allstate." That annuity was closed out and the money deposited into Fidelity, an "MM account also held within PNC." That account was closed and the funds were used to open an Individual Retirement Account. SPS advised, "The mistake was that [PNC] added the same money (the money that was closed out and then re-deposited). PNC is working on sending a letter." Upon receipt, SPS promised to send it "directly."

On September 29, 2015, the Board again wrote to SPS about the investment account, saying that within two weeks, it needed "verification from PNC about this. (Show activity between Dec. 2010 and March 2011)." SPS responded on October 16, 2015, that the money in the investment account was a "close out" from an Allstate annuity that was deposited. "The cash equivalents account then closed into [another account]."

3

On October 27, 2015, SPS arranged a conference call with a representative from PNC, the caseworker from the Board and SPS. They discussed what had occurred in the account, but the PNC representative advised it would not provide a written explanation. The Board denied A.R.'s Medicaid application on October 28, 2015, because it had not been provided with verification of the investment account activity.

A.R. filed a new application for Medicaid on November 25, 2015. On December 28, 2015, a vice-president from PNC sent a letter explaining what had occurred within the investment account.

> PNC Investments requires that annuity positions appear within a client's brokerage account as a "held away" position. [A.R.] liquidated his Allstate annuity contract on March 24, 2011 and the amount received at distribution was $53,054.22 . . . . Based upon the timing of this liquidation, the Allstate annuity contract continued to appear as a "held away" position with the client's PNC Investments account statement for the period of March 1-31, 2011, when it should not have appeared, as it was no longer a position at the close of March.

A.R.'s Medicaid application was approved on December 28, 2015, retroactive to August 1, 2015.

A fair hearing was held before an ALJ in June 2016, about A.R.'s benefits denial in October 2015. The case worker explained that PNC said it would not provide verification of the account but ultimately it did. She needed the verification because the "bank

4

statements didn't make any sense." If they had, she would have accepted them. She asked for clarification "on several occasions."

The Initial Decision denied A.R.'s Medicaid application because he failed to provide the necessary financial verification. Although A.R., through SPS, had communicated with PNC about the investment account, the ALJ found PNC's response was that "the source and verification of the investment account increase was self-explanatory by a review of the annuity statements." The record showed that the Board had asked for "a clear and succinct explanation" about the increase "[o]n numerous occasions." A.R. did not comply with N.J.A.C. 10:71-2.2 "by not verifying or explaining the PNC investment account resource increase."

The Final Agency Decision found that A.R. "was given several opportunities to provide the requested information but failed to provide [it] prior to the October 28, 2015 denial of benefits." Without this verification, "the [Board] was unable to complete its eligibility determination and the denial was appropriate." The final decision adopted the initial decision by denying A.R.'s Medicaid application.

On appeal, A.R. contends that DMAHS's decision was not supported by credible evidence because the Board never asked in writing that PNC verify in writing what had occurred with the account and it denied A.R.'s application for benefits the day

5

after the conference call. He alleges that consistent with N.J.A.C. 10:71-2.3(c), he should have been given an exceptional circumstances extension of time to submit the verification. He argues that he satisfied the requirement to assist the Board but that the Board did not assist him with obtaining the verification needed for his eligibility.

## II.

We review an agency's decision for the limited purpose of determining whether its action was arbitrary, capricious or unreasonable. "An administrative agency's decision will be upheld 'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). "The burden of demonstrating the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." E.S. v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 349 (App. Div. 2010) (alteration in original) (quoting In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)).

"Medicaid is a federally-created, state-implemented program that provides 'medical assistance to the poor at the expense of

6

the public.'" In re Estate of Brown, 448 N.J. Super. 252, 256 (App. Div.) (quoting Estate of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 217 (App. Div. 2004)), certif. denied, In re Estate of Brown, 230 N.J. 393 (2017); see also 42 U.S.C. § 1396-1. To receive federal funding, the State must comply with all federal statutes and regulations. Harris v. McRae, 448 U.S. 297, 301 (1980).

In New Jersey, the Medicaid program is administered by DMAHS pursuant to the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5. Through its regulations, DMAHS establishes "policy and procedures for the application process." N.J.A.C. 10:71-2.2(b). "[T]o be financially eligible, the applicant must meet both income and resource standards." Brown, 448 N.J. Super. at 257; see also N.J.A.C. 10:71-3.15; N.J.A.C. 10:71-1.2(a).

The county welfare boards (CWA) evaluate eligibility. They exercise "direct responsibility in the application process to . . . [r]eceive applications." N.J.A.C. 10:71-2.2(c)(2). "The process of establishing eligibility involves a review of the application for completeness, consistency, and reasonableness." N.J.A.C. 10:71-2.9.

The Board "shall verify the equity value of resources through appropriate and credible sources . . . . If the applicant's

7

resource statements are questionable, or there is reason to believe the identification of resources is incomplete, the [Board] shall verify the applicant's resource statements through one or more third parties." N.J.A.C. 10:71-4.1(d)(3). The applicant is responsible for cooperating fully with the verification process if the CWA has to contact the third party in reference to verifying resources. N.J.A.C. 10:71-4.1(d)(3)(i). The applicant "shall provide written authorization allowing the [Board] to secure the appropriate information." Ibid.

Here, the Board questioned the reported increase in A.R.'s PNC investment account and asked for verification. A.R. contends that the final decision was not supported by credible evidence because the Board never asked in writing for PNC to provide a written explanation about the increase in the account.

N.J.A.C. 10:71-4.1(d)(3) provides that if an applicant's identification of resources is incomplete, the Board must verify the resource statements through a third party. This record shows that the Board asked for verification about the PNC account on February 13, when the application was made, and again on June 15, September 29, and October 27, 2015.

We disagree with A.R.'s argument that when SPS told the Board what the PNC bank representative had said about A.R.'s account, that this information was adequate verification of A.R.'s PNC

8

account. This statement was not credible evidence that the bank statement was mistaken. The regulations did not require the Board to accept this type of representation as proof that the bank made an error. It was clear the Board wanted written verification from PNC about the account. Otherwise it simply would have approved A.R.'s application on June 25 once SPS explained its understanding of the account increase.

A.R. contends that he should have been given more time to provide verification of the account. The Board denied his application on October 28, 2015, just one day after a conference call with PNC. He contends his situation presented an exceptional case, warranting an extension.

The regulations establish timeframes to process a Medicaid application, with the "[d]ate of effective disposition" being the "effective date of the application" where the application has been approved. N.J.A.C. 10:71-2.3(b)(1). "The maximum period of time normally essential to process an application for the aged is [forty-five] days." N.J.A.C. 10:71-2.3(a). New Jersey regulations recognize:

> there will be exceptional cases where the proper processing of an application cannot be completed within the [forty-five day] period. Where substantially reliable evidence of eligibility is still lacking at the end of the designated period, the application may be continued in pending status. In each such

9

> case, the [Board] shall be prepared to
> demonstrate that the delay resulted from one
> of the following:
>
> . . . .
>
> (2) A determination to afford the applicant,
> whose proof of eligibility has been
> inconclusive, a further opportunity to develop
> additional evidence of eligibility before
> final action on his or her application.
>
> [N.J.A.C. 10:71-2.3(c)(2).]

A.R.'s application was made in February 2015 and still was pending in October 2015. This was considerably past the standard timeframe to approve or reject the application. By October, PNC advised that it would not provide the verification sought by the Board. Although A.R. wanted additional time, it was another two months until the requested verification was received from PNC. There was nothing arbitrary, capricious or unreasonable about not extending the deadline further in light of PNC's representations that it would not provide verification and the time that already had elapsed.

A.R. claims he satisfied N.J.A.C. 10:71-2.2(d)(2) by assisting the Board in trying to verify the account. He argues the Board did not assist him as required by N.J.A.C. 10:71-2.2(c). However, although the Board is responsible for assisting an applicant, the regulations did not create an affirmative duty upon

10

the Board to procure all documents necessary to complete the application, especially when A.R. had SPS as his representative.

Here, DMAHS rendered its final decision after interpreting its own regulations. We may reverse only upon a showing that the DMAHS acted arbitrarily, capriciously or unreasonably. "Deference to an agency decision is particularly appropriate where interpretation of the Agency's own regulation is in issue." R.S., 434 N.J. Super. at 261 (quoting I.L. v. Div. of Med. Assistance & Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006)). It is not arbitrary, capricious or unreasonable for DMAHS to deny an application that did not have the information necessary to verify eligibility after giving several adjournments.

Medicaid applications must be processed promptly and Medicaid is intended to be a resource of last resort, reserved for those who have a proven financial or medical need for assistance. See N.E. v. Div. of Med. Assistance & Health Servs., 399 N.J. Super. 566, 572 (App. Div. 2008).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11