**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3451-17

R.P.,

     Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND
HEALTH SERVICES,

     Respondent-Respondent.

_____

Argued January 25, 2021 – Decided April 26, 2021

Before Judges Hoffman and Suter.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Cari-Ann R. Levine argued the cause for appellant (Cowart Dizzia, LLP, attorneys; Cari-Ann R. Levine and Jenimae Almquist, on the briefs).

Jacqueline R. D'Alessandro, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa,

Assistant Attorney General, of counsel; Jacqueline R. D'Alessandro, on the brief).

PER CURIAM

R.P. appeals the February 9, 2018 final agency decision by the Director of the Division of Medical Assistance and Health Services (DMAHS), which adopted the decision of the Administrative Law Judge (ALJ), affirming the denial of R.P.'s application for Medicaid benefits based on a failure to provide certain financial information.  We affirm the final agency decision.

I.

R.P. was admitted to the Hammonton Center for Rehabilitation and Healthcare (Hammonton Center) on September 25, 2015.  She was seventy-nine and resided in the dementia unit.  Her daughter, D.P.S., promptly applied for Medicaid coverage for R.P.'s residence and care at Hammonton Center.

The Medicaid application listed assets that included a house, social security income, and a 401K account with Merrill Lynch.  There were two bank accounts: one with Bank of America and another with the South Jersey Federal Credit Union.  R.P. and her daughter were named on both of those accounts, according to the Medicaid application.  Testimony at the hearing in this case revealed there was more than one Merrill Lynch account.  The application indicated that the cash value of a life insurance policy was liquidated in August

A-3451-17

2015, just before R.P.'s admission to Hammonton Center. The Medicaid application did not designate D.P.S. as an attorney-in-fact or guardian. This was the second Medicaid application for R.P.; the first was denied in February 2015, based on lack of information.

On September 28, 2015 — the same day that R.P. applied for Medicaid — the Atlantic County Board of Social Services (ACBSS) gave D.P.S. a "letter of need," advising her what information and documents it needed to evaluate if R.P. was eligible for Medicaid. ACBSS requested the information to perform the required five-year look back. Only a portion of the requested information was provided.

On January 11, 2016, Jannell Thomas became the Medicaid Coordinator for Hammonton Center. She followed up with the ACBSS case worker in April 2016, because R.P.'s application was still pending approval. Thomas testified that she "believe[d]" the ACBSS caseworker told her "he had all the documents necessary." Thomas was appointed as R.P.'s designated authorized representative (DAR) thereafter.

In May 2016, counsel for Hammonton Center sent a letter expressing its understanding that all requested information had been received by the ACBSS. Thomas called again on June 7, 2016, to inquire about the status of the

application. Counsel for Hammonton Center asked for a fair hearing on R.P.'s Medicaid application.

A new caseworker, Mary Lange, was assigned to R.P.'s file. On July 27, 2016, counsel for Hammonton Center wrote to Lange asking the status. Lange responded to Thomas on August 2, 2016, by requesting additional financial information that included:

> 1. Credit Union Account [account number redacted]
>    a. All 2015 statements
>    b. Statements from April 2013-May 2014
> 2. Deposit histories for the enclosed highlighted deposits
> 3. Withdraw history for the enclosed highlighted withdraw
> 4. Look back on Merrill Lynch account [account number redacted]
> 5. Merrill Lynch account was opened with funds from a Rollover account. Need information on the account that was rolled over.

Thomas testified she received the August 2, 2016 "needs list" letter, but that she could not obtain the information because she was not designated the attorney-in-fact for R.P., nor did R.P. have a guardian. She testified that R.P. herself was not able to provide the requested information. Thomas testified she met with D.P.S., who said she would try to obtain the information, but never

4

did. Thomas did not respond to the August 2, 2016 letter for Hammonton Center.

In September 2016, a year after R.P.'s admission, Hammonton Center filed a verified complaint to appoint a guardian for R.P. However, just a week or two later, on October 7, 2016, R.P. died before a guardian could be appointed.

The ACBSS was not aware of R.P.'s death when it sent Thomas a ten-day notice on October 11, 2016, requesting the same financial information it requested in August. The letter advised R.P.'s application would be denied on October 28, 2016, if the information were not supplied. Less than a week later, on October 17, 2016, counsel representing Hammonton Center notified the caseworker that R.P. died, and they were working with the family of R.P. to have an administrator appointed to complete the Medicaid application. At counsel's request, the case was held open pending appointment of an administrator.

Nearly ninety days later on January 10, 2017, the caseworker sent another ten-day notice letter warning that R.P.'s Medicaid application would be denied on January 27, 2017, unless the requested information were provided. Counsel for Hammonton Center responded the day before that deadline, asking that R.P.'s application remain open. Counsel explained she could not reach D.P.S., and that

5

Hammonton Center would be seeking to have an administrator appointed for the estate. A copy of Hammonton Center's application for letters of administration, dated three days earlier on January 23, 2017, were attached. Because notice to out-of-state heirs could take up to sixty days, counsel advised she did not know when to expect the letters of administration.

On January 31, 2017, the ACBSS denied R.P.'s Medicaid application for "[f]ailure to provide the information needed to make a determination." Hammonton Center requested an administrative hearing on behalf of R.P. The case was transmitted to the Office of Administrative Law (OAL) as a contested case.

Letters of administration were issued on August 3, 2017, appointing Hershy Alter from Hammonton Center as administrator of R.P.'s estate. In September 2017, Alter reappointed Thomas as decedent's DAR. Despite this, Hammonton Center's counsel could not obtain records from Merrill Lynch, claiming that the Merrill Lynch account was a "transfer on death account," it was closed before R.P. died and a court order was required for further information. Counsel certified the South Jersey Federal Credit Union required an original death certificate. Counsel did not explain why this could not be

obtained from the funeral facility or why it did not have multiple originals of the death certificate.

The hearing at the OAL was conducted on October 27, 2017. Barbara Boaugh, a Medicaid supervisor, testified Hammonton Center never provided the requested information prior to the January 2017 denial and still had not provided information from the accounts by the time of the hearing. Prior to the January 2017 denial, there was no evidence of the steps taken to obtain the evidence.

Thomas testified about D.P.S.'s failure to provide information. On the credit union account, D.P.S. was unclear whether she could produce the requested information. On a joint account that D.P.S. had with R.P., Thomas testified that D.P.S. "should be able to" produce that information. Thomas testified that D.P.S. was not listed on account statements in 2014 and 2015, and probably could not provide that information.

The ALJ's initial decision from November 17, 2017, concluded R.P.'s Medicaid application was properly denied based on a lack of financial information even though extra time was provided to respond. The ALJ found there was delay by ACBSS. However, there were no "exceptional circumstances" to keep the application open. R.P.'s representatives did not show "details of timely and diligent efforts" to obtain letters of administration so as

to obtain the requested financial information. The ALJ concluded that D.P.S. was "the best source to obtain the documents." The ALJ noted that no one on behalf of Hammonton Center ever advised ACBSS it needed "assistance to secure the additional documents."

In the exceptions filed on November 22, 2019, Hammonton Center as the designated representative of R.P. challenged two findings by the ALJ; that D.P.S. had access to the accounts and that decedent's death did not constitute exceptional circumstances.

The Director of DMAHS adopted the initial decision as final, finding "[t]here is nothing in the record to demonstrate that [p]etitioner's authorized representative sought to collect any of the missing information or explain the thousands of dollars that washed through [p]etitioner's bank account monthly." The decision detailed the amounts of money deposited and withdrawn in January 2012, March 2013, and August 2014, which was part of the missing information. The Director found D.P.S. had provided some of the information and the application listed her as co-account holder. The Director found "credible evidence in the record . . . that [p]etitioner failed to provide the needed information prior to the January 31, 2017 denial of benefits." Without that, ACBSS could not "complete its eligibility determination . . . ."

8

On appeal from the final agency decision, Hammonton Center makes the following arguments for R.P.:

I. THE MEDICAID DECISION DENYING BENEFITS TO R.P. WAS ARBITRARY, CAPRICIOUS, AND CONTRARY TO LAW (not Raised below)

A. It Was Erroneous to Forgive ACBSS's Prejudicial Delay in Processing the Medicaid Application While Holding R.P. and Her Estate to an Insurmountable and Arbitrary Standard

1. DMAHS Was Granted Leeway For Untimely Processing Under The "Exceptional Circumstances Standard," But R.P. Arbitrarily Was Not (Not Raised Below)

2. The Agency's Refusal to Treat Death as an "Exceptional Circumstance" Warrants Reversal Where It Undermines the Purpose of Medicaid to Afford Benefits for Indigent Elderly Persons

B. The Medicaid Denial to R.P. Should be Reversed as Contrary to Applicable Federal and State Law Concerning Available Resources (Not Raised Below)

1. R.P. Should Not be Denied Medicaid for "Failure to Provide" Where She Lacked a Legal Representative and Assets are Unavailable (Not Raised Below)

9

2. The Agency Relied on Inaccurate Facts Concerning Account Access, Disregarded Critical Evidence of Unavailability, and Unreasonably Favored ACBSS

3. Treatment of Institutionalized and Deceased Medicaid Applicants as Untimely Failing to Provide Information Threatens Access to Care and Discriminates Against The Population Medicaid was Intended to Protect (Not Raised Below)

II.

We review an agency's decision for the limited purpose of determining whether its action was arbitrary, capricious or unreasonable. "An administrative agency's decision will be upheld 'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." E.S. v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 349 (App. Div. 2010) (alteration in original) (quoting In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)).

Hammonton Center contends for R.P. that DMAHS delayed its evaluation of the Medicaid application but would not provide R.P. with enough time to obtain the information requested. It argues R.P.'s death should have been treated as an exceptional circumstance, and it was arbitrary and capricious not to give her more time. Hammonton Center argues that D.P.S. could not access the financial records and it was error to assume she could. Hammonton Center claims the DMAHS's action in denying R.P.'s claim was contrary to the policy directives of the legislature and profoundly discriminatory. Hammonton Center argues that after R.P.'s death she had no ability to liquidate or share her assets and thus, they no longer were "available" to her and she needed more time to provide verification of the accounts.

"Medicaid is a federally-created, state-implemented program that provides 'medical assistance to the poor at the expense of the public.'" In re Estate of Brown, 448 N.J. Super. 252, 256 (App. Div.2017) (quoting Estate of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 217 (App. Div. 2004)); see also 42 U.S.C. § 1396-1. To receive federal funding, the State must comply with all federal statutes and regulations. Harris v. McRae, 448 U.S. 297, 301 (1980).

In New Jersey, the Medicaid program is administered by DMAHS pursuant to the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5.  Through its regulations, DMAHS establishes "policy and procedures for the application process . . . ."  N.J.A.C. 10:71-2.2(b).  "[T]o be financially eligible, the applicant must meet both income and resource standards."  Brown, 448 N.J. Super. at 257; see N.J.A.C. 10:71-3.15; N.J.A.C. 10:71-1.2(a).  The county welfare boards such as ACBSS evaluate eligibility. They exercise "direct responsibility in the application process to . . . [r]eceive applications."  N.J.A.C. 10:71-2.2(c)(2).  "The process of establishing eligibility involves a review of the application for completeness, consistency, and reasonableness."  N.J.A.C. 10:71-2.9.

It was not arbitrary, capricious or unreasonable for DMAHS to deny an application that did not have the information necessary to verify eligibility after giving several extensions.  Medicaid is intended to be a resource of last resort, reserved for those who have a proven financial or medical need for assistance. See N.E. v. Div. of Med. Assistance & Health Servs., 399 N.J. Super. 566, 572 (App. Div. 2008).

The regulations establish timeframes to process Medicaid applications. "The maximum period of time normally essential to process an application for

the aged is [forty-five] days . . . ." N.J.A.C. 10:71-2.3(a). New Jersey regulations recognize "there will be exceptional cases where the proper processing of an application cannot be completed" within these time frames. N.J.A.C. 10:71-2.3(c). However, "[w]here substantially reliable evidence of eligibility is still lacking at the end of the designated period, the application may be continued in pending status." Ibid. One basis for delay is to "afford the applicant, whose proof of eligibility has been inconclusive, a further opportunity to develop additional evidence of eligibility before final action on his or her application." N.J.A.C. 10:71-2.3(c)(2).

There was nothing arbitrary, capricious or unreasonable by the agency in denying this application. R.P.'s second application was made in September 2015. A needs list was provided to her daughter on the same day. The application was still pending in January 2017. This was considerably past the standard timeframe to approve or reject the application. There was no or limited follow-up by the first assigned caseworker, and when the newly assigned one did follow-up with a needs list, Hammonton Center pursued a guardianship to obtain the information. Unfortunately, R.P. died, and an administrator was needed for R.P.'s estate. Counsel for Hammonton Center twice acknowledged the need for an administrator but did not pursue this for nearly ninety days after

13

R.P.'s death. Hammonton Center's representative submitted an application for letters of administration for R.P.'s estate just a few days before the extended deadline expired. Hammonton Center did not explain to ACBSS what actions it had taken to pursue the outstanding financial information, its plan to obtain it, or when it would do so.

The final agency decision was not arbitrary and capricious by forgiving ACBSS's "prejudicial delay" but not that by petitioner. There was nothing in the decision about forgiveness. The decision expressed the Director's concern that questions remained about R.P.'s Medicaid eligibility because the financial records showed significant sums of money passing through R.P.'s accounts without any explanation about the source or use of the funds. R.P.'s representatives do not provide an explanation for these monies or argue that DMAHS incorrectly pursued this issue.

Hammonton Center does not explain what would have been done differently to obtain the financial information between September 2015, when R.P was admitted, and August 2016, when the ACBSS sent the needs letter. There is no indication R.P. was able to respond to the need for financial information at any time during her admission. After R.P.'s death in October 2016, Hammonton Center was aware of the need for an administrator, and never

14

explained its efforts to obtain that appointment or to obtain the requested financial information. The ACBSS gave two extensions to Hammonton Center to obtain an administrator for the estate. The ACBSS declined to keep the application open and denied petitioner's application on January 31, 2017, for failure to provide the information needed to decide it.

This case is distinguishable from <u>I.L. v. N.J. Dep't. of Human Servs.</u>, 389 N.J. Super. 354 (App. Div. 2006), on which Hammonton Center relies. In <u>I.L.</u> the question was whether life insurance policies were countable assets in determining Medicaid eligibility. Here, the application was denied because requested financial information was not supplied; the agency did not reach the issue about countable resources.

The final agency decision was consistent with the DMAHS regulations. The DMAHS was not arbitrary, capricious or unreasonable in enforcing its eligibility regulations when there was no explanation for the monies in these accounts and no explanation by Hammonton Center of its efforts.

After carefully reviewing the record and the applicable legal principles, we conclude that appellant's further arguments are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-3451-17