**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2192-19

C.H.,

     Petitioner-Appellant,

v.

CAMDEN COUNTY BOARD
OF SOCIAL SERVICES,

     Respondent-Respondent.

_____

Argued September 27, 2021 – Decided October 19, 2021

Before Judges Sumners and Firko.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Cari-Ann Levine argued the cause for appellant (Cowart Dizzia, LLP, attorneys; Cari-Ann Levine and Jenimae Almquist, on the briefs).

Mark D. McNally, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Mark D. McNally, on the brief).

PER CURIAM

Petitioner C.H.,[1] who is now deceased, appeals from a final agency decision by the Department of Human Services (DHS), Division of Medical Assistance and Health Services (Division), denying his Medicaid application because he failed to provide bank records after receiving multiple requests from the Camden County Board of Social Services (Board). We affirm.

I

On December 29, 2017, C.H., a long-term care resident at the Deptford Center for Nursing and Rehabilitation since his admission in March 2018, filed an application with the Board for Medicaid benefits under the Aged, Blind, and Disabled Program. On May 18, 2018, the Board sent C.H. a verification letter requesting him to confirm the source of an August 18, 2017, T.D. bank account deposit totaling $11,967.54; a September 5, 2017 debit payment; and to forward a copy of his birth certificate. C.H.'s application was marked as "pending" and he was granted a fifteen-day extension to June 2 to provide the requested documentation.

---

[1] According to his death certificate, petitioner's first name is M. and, thus, has been identified as "M.H." in Cheryl Soistmann's designated authorized representative (DAR) application. However, the record and the parties' merits briefs refer to petitioner as "C.H." We will use that appellation.

A-2192-19

In the meantime, on May 23, the Board sent another verification letter to C.H., this time to his DAR Soistmann. (Ra4-6). The letter reiterated the request seeking verification of the source of the $11,967.54 deposit on August 18, 2017. In the same letter, the Board also sought C.H.'s complete T.D. bank statements for one account for March 1, 2014 to April 30, 2014 and another account for April 14, 2017 to November 30, 2017. As to both accounts, the Board sought verification of "all transactions $2000[] and over, if any." The Board also specified that the September 5, 2017 debit it previously inquired about was in the amount of $2699. C.H. was granted another fifteen-day extension, having until June 7, 2018 to provide the requested documentation.

When Soistmann did not comply with the Board's requests, the agency sent her a verification letter on July 16, as a "[f]inal request" with "no additional extensions" to provide the documentation. The Board also sought additional information regarding transactions for a T.D. bank account, including a $26,638.96 deposit on April 14, 2017; the identification of the owner of a T.D. bank account; and if owned by C.H., complete bank statements for December 1, 2012, to December 31, 2017; and verification of "all transactions $2000[] and over, if any." In addition, the Board specifically sought verification of a $10,000

3

deposit on January 16, 2014. A fifteen-day extension to August 1, 2018, was given to provide the documentation.

Over the next thirty days, Soistmann and Board caseworker, Kelly Myers, exchanged several emails concerning the former's claim that she had difficulties in communicating with C.H.'s bank to obtain the sought-after documents. On at least two separate occasions, Myers suggested additional options for Soistmann to provide the requested documentation, even after the deadline to provide the documentation had expired.[2]

> Despite Soistmann's non-compliance by the deadline, the Board continued to ask her for the documentation. In an August 9 email—eight days after the Board's deadline—Myers advised Soistmann she hadalready been instructed to deny [C.H.'s] application if everything was not provided by the due date, which has already passed. . . . If you have any of the items[,] you should send them as soon as possible so I can note I have received something because I won't be able to grant an extension.

---

[2] In a July 16, 2018 email, Myers informed Soistmann that "two deposit transactions" from C.H.'s bank were illegible "[p]robably because they were faxed." Myers then asked if Soistmann could "try emailing . . . or mailing the originals please?" In Myers' August 9 email, Soistmann was reminded that two check deposits faxed were illegible, therefore Soistmann "should also mail or email clear copies please."

A-2192-19

On Friday, August 17, Myers emailed Soistmann telling her to submit the requested documentation "at least [by the following] Monday but possibly Wednesday."

C.H. unfortunately died on September 1. On September 19, the Board denied C.H's application for "[f]ailure to assist by not providing the requested documentation: [f]ailed to provide verification of ownership for one transfer account . . . and [the] source of one $10,000 deposit." Approximately one year later, Deptford Center staff member Jannell Thomas became C.H.'s DAR, having been appointed by Carol N. Goloff, Administrator of the Estate of M.H.[3]

C.H. made a timely request for a fair hearing. The Board eventually received the requested documentation from C.H.'s counsel in October 2019, well over a year after the last deadline afforded by the Board.

Following the October 28, 2019 hearing, an Administrative Law Judge (ALJ) issued an initial decision on November 14, affirming the Board's denial of C.H.'s Medicaid application. The ALJ rejected C.H.'s assertion "that the Medicaid application should not have been denied where all verifications known to the DAR had been requested prior to the Board's deadline, diligence was

---

[3] On July 5, 2019, the Camden County Surrogate issued letters of administration to Goloff.

A-2192-19

shown, and petitioner did not purposefully or deliberately refuse to cooperate with the application process." The ALJ also found no merit in C.H.'s contention "that the Board failed to assist the applicant in compliance with N.J.A.C. 10:71-4.1(d) and to use secondary sources when available N.J.A.C. 10:71[]-1.6(a)(2)." The ALJ reasoned:

> The regulations [(N.J.A.C. 10:71-2.2(c), -2.2(e)(2), and -2.3(a))] clearly establish that an applicant must provide sufficient information and verifications to the Board in a timely manner to allow it to determine eligibility. The record reflects that the Board complied with the regulations in processing the application and notifying C.H. that additional documentation was required to determine eligibility. [C.H.] did not provide the information before the August 1, 2018 deadline— and not before the September 19, 201[8], letter of denial. Nor was evidence shown that [C.H.] formally requested an extension of time for submission of information.

The ALJ also noted, "although [C.H.] may [have] ultimately been able to obtain the documents requested after considerable effort, 'exceptional circumstances' are not present to justify an extension of the time limit."

In its December 8 final agency decision, the Division stated it was adopting the ALJ's initial decision "in its entirety and incorporat[ing] the same herein by reference." The Division added: "The credible evidence in the record indicates that [C.H.] failed to provide the needed information prior to the August

1, 2018 deadline or the September 19, 2018 denial of benefits. Without this information, [the Board] was unable to complete its eligibility determination and the denial was appropriate."

II

"Judicial review of agency determinations is limited." Allstars Auto Group, Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). In reviewing the agency's decision, we consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Ibid. (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

A-2192-19

"A reviewing court 'must be mindful of, and deferential to, the agency's expertise and superior knowledge of a particular field.'" Id. at 158 (quoting Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009)). "A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 483 (2007)). "Deference to an agency decision is particularly appropriate where interpretation of the [a]gency's own regulation is in issue." R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting I.L. v. N.J. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006)). "However, a reviewing court is 'in no way bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue.'" Allstars Auto Grp., 234 N.J. at 158 (alteration in original) (quoting Dep't of Children & Families, Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 302 (2011)).

Medicaid, is a federally-created, state-implemented program that provides "medical assistance to the poor at the expense of the public." Estate of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 217 (App. Div. 2004) (quoting Mistrick v. Div. of Med. Assistance & Health

Servs., 154 N.J. 158, 165 (1998)); <u>see also</u> 42 U.S.C. § 1396-1.  Although a state

is not required to participate, once it has been accepted into the Medicaid

program it must comply with the Medicaid statutes and federal regulations.  <u>See</u>

<u>Harris v. McRae</u>, 448 U.S. 297, 301 (1980); <u>United Hosps. Med. Ctr. v. State</u>,

349 N.J. Super. 1, 4 (App. Div. 2002); <u>see also</u> 42 U.S.C. § 1396a(a) and (b).

The State must adopt "'reasonable standards . . . for determining eligibility

for . . . medical assistance . . . consistent with the objectives' of the Medicaid

program[,]" <u>Mistrick</u>, 154 N.J. at 166 (first alteration in original) (quoting <u>L.M.</u>

<u>v. Div. of Med. Assistance & Health Servs.</u>, 140 N.J. 480, 484 (1995)), and

"provide for taking into account only such income and resources as are . . .

available to the applicant," <u>N.M. v. Div. of Med. Assistance & Health Servs.</u>,

405 N.J. Super. 353, 359 (App. Div. 2009) (quoting <u>Wis. Dep't of Health &</u>

<u>Family Servs. v. Blumer</u>, 534 U.S. 473, 479 (2002)); <u>see also</u> 42 U.S.C. §

1396a(a)(17)(A)-(B).

New Jersey participates in the Medicaid program pursuant to the New

Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to - 19.5.

Eligibility for Medicaid in New Jersey is governed by regulations adopted in

accordance with the authority granted by N.J.S.A. 30:4D-7 to the Commissioner

of the DHS.  The Division is the agency within the DHS that administers the

A-2192-19

Medicaid program. N.J.S.A. 30:4D-5, -7; N.J.A.C. 10:49-1.1. Accordingly, the Division is responsible for protecting the interests of the New Jersey Medicaid Program and its beneficiaries. N.J.A.C. 10:49-11.1(b). Through its regulations, the Division establishes "policy and procedures for the application process[.]" N.J.A.C. 10:71-2.2(b). "[T]o be financially eligible, the applicant must meet both income and resource standards." In re Estate of Brown, 448 N.J. Super. 252, 257 (App. Div. 2017); see also N.J.A.C. 10:71-3.15; N.J.A.C. 10:71-1.2(a).

In New Jersey, the Medicaid applicant is "the primary source of information. However, it is the responsibility of the [county welfare] agency to make the determination of eligibility and to use secondary sources when necessary, with the applicant's knowledge and consent." N.J.A.C. 10:71-1.6(a)(2). The Board, a county welfare agency, must "[a]ssist the applicant[] in exploring [his or her] eligibility for assistance[,]" and "[m]ake known to the applicant[] the appropriate resources and services both within the agency and the community, and, if necessary, assist in their use[.]" N.J.A.C. 10:71-2.2(c)(3) to (4). However, the applicant must: "1. [c]omplete, with assistance from the [Board] if needed, any forms required by the [Board] as a part of the application process; 2. [a]ssist the [Board] in securing evidence that corroborates his or her

statements; and 3. [r]eport promptly any change affecting his or her circumstances." N.J.A.C. 10:71-2.2(e).

> The [Board] shall verify the equity value of resources through appropriate and credible sources. Additionally, the [Board] shall evaluate the applicant's past circumstances and present living standards in order to ascertain the existence of resources that may not have been reported. If the applicant's resource statements are questionable, or there is reason to believe the identification of resources is incomplete, the [Board] shall verify the applicant's resource statements through one or more third parties.
>
> [N.J.A.C. 10:71-4.1(d)(3).]

The applicant bears a duty to cooperate fully with the Board in its verification efforts, providing authorization to the Board to obtain information when appropriate. N.J.A.C. 10:71-4.1(d)(3)(i).

> If verification is required in accordance with the provisions of N.J.A.C. 10:71-4.1(d)[(3)], the [Board] shall . . . verify the existence or nonexistence of any cash, savings or checking accounts, time or demand deposits, stocks, bonds, notes receivable or any other financial instrument or interest. Verification shall be accomplished through contact with financial institutions, such as banks, credit unions, brokerage firms and savings and loan associations. Minimally, the [Board] shall contact those financial institutions in close proximity to the residence of the applicant or the applicant's relatives and those institutions which currently provide or previously provided services to the applicant.

A-2192-19

[N.J.A.C. 10:71-4.2(b)(3).]

The Board may perform a "[c]ollateral investigation" wherein it contacts "individuals other than members of applicant's immediate household, made with the knowledge and consent of the applicant[]." N.J.A.C. 10:71-2.10(a). "The primary purpose of collateral contacts is to verify, supplement or clarify essential information." N.J.A.C. 10:71-2.10(b). Neither N.J.A.C. 10:71-4.1(d)(3) nor N.J.A.C. 10:71-2.10 requires a Board to undertake an independent investigation of an applicant. The Board instead is charged with verifying information provided by an applicant. For example, while N.J.A.C. 10:71-4.2(b)(3) requires the Board to contact an applicant's financial institutions to verify an account's existence, it does not require the agency to obtain records directly from a financial institution.

Having carefully reviewed the record and applicable legal principles, we conclude the Division's decision was not arbitrary, capricious, or unreasonable and comports with controlling law. The Board's role is to assist the applicant in completing an application and to verify financial information when necessary. On three occasions, the Board extended C.H.'s deadline to submit the bank documentation it requested. The documents were not submitted in a timely manner. By extending C.H.'s application three times, the Board, in fact,

12

exceeded its requirements to allow more time to submit the requested documents. The Division, in turn, acted reasonably in upholding the denial of benefits.

There is no merit to the argument that because C.H.'s bank did not cooperate with Soistmann's requests for documentation, "the [Board] should have accepted the only resource information which was available." The Division properly required C.H. to provide financial documentation to verify any transaction $2,000 and over. While Soistmann made efforts to obtain the documentation, she did not provide it in a timely fashion. The fact that the documentation was eventually obtained and provided to the Board—over a year after the denial of benefits—suggests it was available. C.H.'s representatives eventually obtained the documentation without the Board's involvement. The Board had no obligation to obtain the documentation. Further, there was no showing the Board was in a position to do so.

There is no merit to C.H's argument that the documents requested by the Board were unavailable under N.J.A.C. 10:71-4.1(c). C.H. incorrectly construes the availability of documents as a resource. "A resource shall be considered available to an individual when…[t]he person has the right, authority or power to liquidate real or personal property or his or her share of it'" or if the resource

13

is "deemed available to the applicant." N.J.A.C. 10:71-4.1(c) (emphasis added). The regulation does not specify that a resource is a document or documents verifying the existence of "real or personal property, or his or her share of it." N.J.A.C. 10:71-4.1(c); see also, Estate of F.K. v. Div. of Med. Assistance & Health Servs., 374 N.J. Super. 126, 134 (App. Div. 2005) (noting "all liquid and non-liquid resources are considered countable in determining [Medicaid] eligibility."). The available resource contemplated by the regulation refers to the actual resource, not the documentation verifying its existence. And as noted, C.H.'s counsel did eventually provide the requested documentation.

Despite C.H. not providing these documents by the final deadline of August 1, the Board continued to effectively leave his application pending forty-nine additional days. C.H. was repeatedly informed about the document requests in the Board's May 23, 2018 and July 16 verification letters, as well as Myers' July 16, 2018 and August 17, 2018 emails. Yet, he failed to supply the requested documents. Thus, the Board did not violate any expressed or implied legislative policies in denying C.H.'s application.

C.H. also argues the Board erred in denying his application because he provided the requested documentation, namely the illegible checks, and Soistmann "engaged in multiple efforts to secure more information by [the

14

Board] and kept [it] well-informed that the bank and prior [nursing home] were not releasing that information." And, C.H.'s estate contends, Soistmann's efforts, along with C.H.'s death, constituted exceptional circumstances under N.J.A.C. 10:71-2.3(c). We disagree.

Under N.J.A.C. 10:71-2.3(c), "[i]t is recognized that there will be exceptional cases where the proper processing of an application cannot be completed within the 45/90-day period."[4] Where substantially reliable evidence of eligibility is still lacking at the end of the designated period, the application may be continued in pending status. In each such case, the Board shall be prepared to demonstrate the delay resulted from one of the following:

> 1. Circumstances wholly within the applicant's control;
>
> 2. <u>A determination to afford the applicant, whose proof of eligibility has been inconclusive, a further opportunity to develop additional evidence of eligibility before final action on his or her application</u>;
>
> 3. An administrative or other emergency that could not reasonably have been avoided; or
>
> 4. Circumstances wholly outside the control of both the applicant and [the Board].
>
> [N.J.A.C. 10:71-2.3(c) (emphasis added).]

---

[4] The ninety-day maximum period to process a Medicaid application is for the disabled or blind. N.J.A.C. 10:71-2.3(a).

The Board repeatedly informed Soistmann the checks she submitted were illegible and provided additional options to submit this documentation. More specifically, the Board denied C.H.'s application because he "[f]ailed to provide verification of ownership for one transfer account . . . and [the] source of one $10,000 deposit." In her July 16, 2018 email, Myers requested verification of the $10,000 deposit. The source of the deposit was not provided to the Board until October 2019, well over a year after August 1, 2018 deadline.

Finally, the record belies the argument that C.H.'s September 1, 2018 death made it more difficult to acquire the requested documents. The Board sought the documentation with its first verification letter on May 18, 2018, almost four months before his death. There is nothing in the record showing that C.H.'s death prevented or even hindered the production of the documentation to the Board.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2192-19